STATE of Missouri, Respondent,

v.

Jamie AVERY, Appellant.

No. SC 89390.

Supreme Court of Missouri,
En Banc.

Jan. 13, 2009.

Motion for Rehearing or Modification
Denied Feb. 10, 2009.

Craig A. Johnston, Office of the State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

ZEL M. FISCHER, Judge.

Jamie Avery was charged with committing the class A felony of second-degree murder and the unclassified felony of armed criminal action for killing Bruce Paris with a handgun. Sections 565.021 and 571.015, RSMo 2000. The jury found Avery guilty of committing the lesser-included offense of voluntary manslaughter and armed criminal action. Sections 565.023 and 565.025.2(2)(a), RSMo 2000. The two convictions resulted in concurrent terms of imprisonment for 15 and 35 years, respectively.

On appeal, Avery presents two points for discussion. First, she contends the trial court erred in giving Instruction No. 6, a voluntary intoxication instruction based on MAI–CR3d 310.50, because the instruction lacked evidentiary support. Second, she contends the trial court erred in excluding evidence that Paris was a registered sex offender. This Court affirms the trial court's judgment.

## I. Factual Background

The evidence was Avery shot Paris once with a .38 revolver. The bullet went through Paris' right elbow and entered his neck, causing massive bleeding that resulted in his death. Avery called the Hickory County sheriff's department to report that she had shot an intruder. In less than 10 minutes, several police officers had arrived on the scene. Avery was extremely upset, hysterical and crying.

In a videotaped statement to police, Avery said: (1) she told Paris to leave the house, but he refused; (2) he complied only after she grabbed a gun and threatened to call the police; (3) a short while later, she went out on the porch with her dog; (4) she took the gun with her because she was afraid of the dark and also feared Paris would return; (5) she was holding the gun behind her with her finger on the trigger; (6) after hearing a noise and seeing a figure approaching the house, she ran back inside without closing the door; (7) when Paris walked in the front door, she pointed the gun at him; (8) he told her to put the gun down, or he would beat her; (9) Paris grabbed at the gun, and she shot him; and (10) she did not mean to kill him.

Additional facts necessary to the disposition of the case are included below as Avery's points are addressed.

## II. Analysis

Avery first contends the trial court erred by giving a voluntary intoxication instruction because it was not supported by the evidence.

At trial, the State's theory was that Avery killed Paris to protect her relationship with another man. Avery claimed she acted in lawful self-defense and defense of premises. Avery did not admit any wrongdoing or try to defend the charges against her by claiming she was intoxicated. The State introduced evidence relating to Avery's consumption of alcohol. During the State's case-in-chief, a number of witnesses were called who had observed Avery on the date of the offense. These included: (1) an acquaintance; (2) all four officers who saw Avery at the scene immediately after Paris was shot; and (3) the bartender and a waitress from a local bar.

Avery argues none of these people opined that she appeared to be intoxicated, nor did they provide any testimony from which it reasonably could be inferred that her faculties were impaired from her consumption of alcohol. She argues there was no evidence that she had slurred speech, coordination problems or other recognized indicia of intoxication.

At the instruction conference, the State tendered Instruction No. 6. This instruc-

tion, which was based on MAI–CR3d 310.50, stated:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for her conduct.[1]

Defense counsel objected to the instruction, conceding there was evidence that Avery had consumed alcohol, but arguing there was no evidence that she had become intoxicated. The prosecutor did not respond to counsel's statement. The current Notes on Use to MAI–CR 310.52 did not give the trial court any guidance on this issue. The trial court overruled the objection and gave the instruction. Thereafter, the jury was instructed on lawful self-defense, lawful defense of premises, second-degree murder, voluntary manslaughter, involuntary manslaughter and armed criminal action.

During closing argument, the State never argued that Avery was voluntarily intoxicated when Paris was killed. Instead, the State simply noted that Avery had consumed a number of alcoholic beverages during seven or so hours prior to the shooting.

The jury found Avery guilty of voluntary manslaughter and armed criminal action. To find Avery guilty of the former offense, the jurors had to reject Avery's assertion that she acted in lawful self-defense or lawful defense of premises.

▬▬▬ As noted, Avery claims the trial court erred in submitting Instruction No. 6 due to lack of evidentiary support. A jury instruction must be supported by substantial evidence and the reasonable inferences to be drawn therefrom. *State v. Daugher-*

ty, 631 S.W.2d 637, 639 (Mo. banc 1982); *Coday v. State,* 179 S.W.3d 343, 354 (Mo. App.2005). Reversal is only required, "for instructional error which misleads the jury to the prejudice of the defendant." *State v. White,* 738 S.W.2d 590, 593 (Mo.App. 1987). Avery argues that Instruction No. 6 was likely to confuse or mislead the jury into believing that she had admitted some wrongdoing and was attempting to escape liability based on voluntary intoxication. If an instruction is an accurate statement of law and supported by the evidence, however, there is no prejudice. MAI–CR3d 302.03, given in every criminal case, specifically instructs the jury "[t]he Court does not mean to assume as true any fact referred to in those instructions but leaves it to you to determine what the facts are."

Avery relies on *State v. Bristow,* 190 S.W.3d 479 (Mo.App.2006). Bristow was charged with first-degree assault and armed criminal action. He relied on a theory of self-defense. *Id.* at 481. The State presented evidence that Bristow had consumed eight beers over a nine to nine and one-half hour period. *Id.* Instruction No. 13, which was a voluntary intoxication instruction based on MAI–CR3d 310.50, was given over Bristow's objection. On appeal, Bristow argued that Instruction No. 13 misled or confused the jury to his prejudice. *Id.* The court in *Bristow* was required to decide "what constitutes sufficient evidence of a voluntarily intoxicated condition to trigger the giving of MAI–CR3d 310.50." *Id.* at 484. Based on the facts presented in that case, the *Bristow* court held proof of alcohol consumption alone was not sufficient:

> We refuse to accept the State's argument that *any* evidence of alcohol consumption is sufficient to show "intoxicat-

---

1. Voluntary intoxication, unlike involuntary intoxication, does not negate a mental state that is an element of the criminal offense. Section 562.076, RSMo 2000.

ed condition." We are persuaded that [Bristow] is correct when he asserts that there must be evidence showing some level of impairment resulting from an intoxicated condition before MAI–CR3d 310.50 is proper.

*Id.* at 484. The *Bristow* court went on to hold that because no such evidence was in the record, it was error to give the instruction based on MAI–CR3d 310.50 in Bristow's case; further, the error was prejudicial because the jury was misled into believing that: (1) Bristow was attempting to escape liability based on intoxication and (2) he was, in fact, intoxicated. The court in *Bristow* failed to consider that MAI–CR3d 302.03 specifically instructs the jury not to assume any fact referred to in the instructions as well as the case law that the jury is presumed to have read and followed the instructions. *State v. Forrest,* 183 S.W.3d 218, 230 (Mo. banc 2006); *State v. Gray,* 887 S.W.2d 369, 380 (Mo. banc 1994).

The State argues that Instruction No. 6 properly was given in the case at bar because there was adequate evidence of intoxication. There was evidence that Avery had consumed eight to eleven beers and a mixed drink over a seven-hour period.[2]

The State asks this Court to reexamine the *Bristow* analysis because that opinion is at odds with *State v. Mouse,* 989 S.W.2d 185 (Mo.App.1999),[3] and *State v. Owsley,* 959 S.W.2d 789 (Mo. banc 1997). Avery argues there was no real dispute in *Mouse* and *Owsley* that the defendants were voluntarily intoxicated when the crimes were committed; therefore, the statements that evidence of impairment is not necessary to submit MAI–CR3d 310.50 was merely dicta.

In *Owsley,* this Court did not require any evidence of impairment to uphold the giving of a voluntary intoxication instruction. Consequently, the Notes on Use to MAI–CR3d were modified to delete the requirement of evidence of impairment.

In *Mouse,* 989 S.W.2d at 189 n. 4, the court states that no evidence of impairment is necessary to support the submission of a voluntary intoxication instruction. As pointed out in *Mouse,* the prior cases based on prior Notes on Use to MAI–CR3d required evidence of impairment in order to submit the instruction.

Whether there should be a difference in type of proof necessary to support this instruction as compared to the type of proof necessary to support a finding of intoxicated condition in a verdict directing instruction for driving while intoxicated is a legitimate inquiry. The phrase "intoxicated condition" is not defined as used in MAI–CR3d 310.50.

The purpose of finding someone is in an intoxicated condition for purposes of driving while intoxicated is to criminalize individuals for driving while in an impaired condition as a result of alcohol or drugs. The purpose of MAI–CR3d 310.50 is to make sure the jury understands the law when determining an accused's guilt or innocence, that being in an "intoxicated condition" does not relieve an accused of responsibility for her conduct. MAI–CR3d 310.50 is unique in that regard, because it is a comment on the evidence. The Notes on Use to MAI–CR3d 310.50 provide that "[t]his instruction should not be given if intoxication is a basis for crimi-

---

2. In a statement to the highway patrol, defendant said she drank eight beers during the course of the evening. The higher number came from the acquaintance's testimony.

3. *Mouse* was overruled on other grounds by *State v. Pond,* 131 S.W.3d 792, 794 (Mo. banc 2004).

nal responsibility. For example, this instruction is not to be given in a trial for driving while intoxicated."

Section 562.076, RSMo 2000, informs MAI–CR3d 310.50. The relevant part of that statute provides:

1. A person who is in an intoxicated ... condition ... from alcohol is criminally responsible for conduct....

* * *

3. Evidence that a person was in a voluntarily *intoxicated* ... *condition* may be admissible when otherwise *relevant on issues of conduct* but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person was in a voluntarily intoxicated ... condition has been received into evidence. (Emphasis added.)

This statute reflects the long-standing public policy of Missouri "prohibiting jurors from considering intoxication on the issue of specific [or general] intent." *State v. Erwin*, 848 S.W.2d 476, 482 (Mo. banc 1993). As this Court in *Erwin* explained, "the rule is rooted in the common law and in society's reproach toward persons who are voluntarily intoxicated" and "merely treats a sober person and a voluntarily intoxicated person as equally responsible for conduct." *Erwin*, 848 S.W.2d at 482.

In this case, there was abundant evidence of Avery's alcohol consumption to support the trial court's determination that without being instructed as to the legal effect of that evidence, the jury might well have been left to guess as to what legal effect to give that evidence.

■ In Avery's second point, she contends that the trial court erred in excluding evidence that Paris was registered as a sex offender. Avery argues such evidence was admissible to demonstrate whether the victim was the initial aggressor. There was no evidence offered at trial that Avery knew anything about the conviction. This is important because the mere fact of a sex-offender registration is of little, if any, probative value in determining who was the initial aggressor. In addition to other reasons, the trial court specifically ruled "that the prejudicial effect of evidence outweighs its probative value."

■ The trial court is vested with broad discretion in ruling on questions of admissibility of evidence, and, absent a clear showing of abuse of discretion, this Court should not interfere with the trial court's ruling. *State v. Dunn*, 817 S.W.2d 241, 245 (Mo. banc 1991). The record does not demonstrate an abuse of discretion in excluding the evidence of the victim's registration as a sex offender under principles of *State v. Gonzales*, 153 S.W.3d 311 (Mo. banc 2005), or *State v. Waller*, 816 S.W.2d 212 (Mo. banc 1991).

### III. Conclusion

The judgment is affirmed. To the extent *Bristow* holds that, in addition to alcohol consumption, there must be direct evidence of impairment, that decision is overruled. This Court continues to leave to the trial court's discretion, when instructions are supported by the evidence, which instructions are necessary to avoid misleading or confusing the jury. Accurately informing the jury concerning a point of law will limit, rather than increase, the chance of a jury being misled or confused.

All concur.