**STATE of Missouri, Plaintiff/Respondent,**

v.

**Jeffrey GARVEY, Defendant/Appellant.**

**No. ED 93221.**

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 9, 2010.

Application for Transfer to Supreme Court Denied Dec. 21, 2010.

Application for Transfer Denied Jan. 25, 2011.

Shaun J. Mackelprang, John W. Grantham, James B. Farnsworth, Jefferson City, MO, for Plaintiff/Respondent.

Michael A. Gross, St. Louis, MO, for Defendant/Appellant.

SHERRI B. SULLIVAN, P.J.

*Introduction*

Jeffrey Garvey (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of four counts of first-degree statutory sodomy, two counts of first-degree molestation, and one count of attempted first-degree statutory rape. We affirm.

*Factual and Procedural Background*

The State charged Appellant with four counts of first-degree statutory sodomy (Counts I, II, IV, and V), two counts of first-degree child molestation (Counts III and VI), and one count of first-degree statutory rape (Count VII). Appellant does not contest the sufficiency of the evidence to support his conviction. The evidence, viewed in the light most favorable to the verdict, is as follows.

In 2002, the victim in this case, O.B., and her mother (Mother), moved in with Appellant, Mother's boyfriend. At that time, O.B. was in the third grade. While O.B. and Mother lived there, Appellant would watch O.B. when Mother was at work or otherwise not at home.

When O.B. was in the fourth grade, Appellant began touching her breasts and vagina with his fingers and his tongue. Appellant touched her this way two or three times per month. Appellant continued to touch O.B.'s breasts and vagina with his hands and mouth during her fifth and sixth grade years of school. When O.B. was in the sixth grade, Appellant tried to put his penis into her vagina but was unable to complete the act.

When O.B. was in the fourth grade, Appellant took a photo of her in her panties, a tank top, a hat, and high heeled shoes. Appellant also took a photograph of O.B. in which she appeared to be wearing a hat and a tank top and was wrapped in a sleeping bag. Appellant showed Mother photos on the internet of young girls posing in their underwear, and told her that he wanted to take similar photos of O.B. as a way to make money. Mother was alarmed and told him no, but Appellant brought the subject up again later.

In February 2006, when O.B. was in the seventh grade, Appellant and O.B. got into an argument over what O.B. wanted to wear to school, during which Appellant spanked O.B. Appellant and Mother got into a disagreement over how to discipline O.B., resulting in Mother and O.B. moving out.

Shortly thereafter, Mother and Appellant tried to reconcile. For Valentine's Day, Appellant gave Mother a card and flowers and sent O.B. a card with $20 in it. Mother pressed O.B. to call and thank Appellant for the card, but O.B. refused. When it appeared that Mother was going to reunite with Appellant, O.B. told Moth-

er that she did not want to go back and that Appellant had been sexually abusing her. Mother took O.B. to St. Anthony's Hospital the next day where she was examined by Dr. Peter Berglar (Dr. Berglar).

At trial, Appellant called Dr. Berglar, who testified that he conducted a pelvic examination on O.B. upon allegations that she was sexually assaulted. Dr. Berglar testified that O.B.'s examination was normal, but that a lack of physical exam findings did not rule out penetration. Dr. Berglar testified that in the overwhelming majority of pelvic examinations he conducted due to allegations of sexual abuse, he found no physical evidence of abuse.

The State introduced letters and cards written by Appellant to O.B., which included the following sentiments:

"Do you know that my heart beats only because of you ? You mean the whole world to me."

"Do you realize how much I love you ? *All* of my heart and soul."

"I love and miss you sooo ... very much, it hurts."

The State also introduced the video deposition of Detective Jeffery Munzlinger (Munzlinger). Munzlinger testified that during an interview with Appellant, Appellant told Munzlinger, "I know that I shouldn't tell you this, but I trusted her."

Appellant testified in his own defense at trial. Appellant denied having sexual intercourse with O.B. or touching her in a sexual way.

The trial court directed a verdict as to Count VII, first-degree statutory rape, but permitted the State to submit an instruction to the jury on attempted first-degree statutory rape. The jury found Appellant guilty on all counts. The jury recommended sentences of 20 years' imprisonment on each of the four first-de-gree statutory sodomy convictions, 10 years' imprisonment on both of the first-degree child molestation convictions, and 23 years' imprisonment for the attempted statutory rape conviction. The trial court sentenced Appellant in accordance with the jury's recommendation and ordered that all sentences be served concurrently. This appeal follows.

### Points Relied On

In his first point on appeal, Appellant argues the trial court erred in denying his challenges to two prospective jurors, one of whom was a rape victim and the other who was the husband of a child molestation victim, or the court committed plain error in failing to make further inquiry into the qualification of those individuals, because the denial of his challenges for cause and the absence of meaningful inquiry into the effect of each individual's exposure to sexual assault crimes deprived him of his right to trial by an impartial jury under Mo. Const. Art. I, Section 18(a), and to due process and a fair trial under U.S. Const. amend. XIV and Mo. Const. Art I, Section 10, in that (1) sexual assault crimes have a singularly devastating emotional impact upon victims, (2) the sole affirmative basis for finding each of the challenged jurors qualified was the individual's unexamined self-qualifying statement, (3) the context in which those self-qualifying statements were made was suggestive or coercive of such an affirmative response, (4) so many veniremembers disclosed that they or their family members had been victims of sexual assault that the peremptory challenges available to Appellant were insufficient to afford him a reasonable prospect of a trial before impartial jurors, and (5) each of the challenged jurors served on the jury that unanimously found Appellant guilty of all seven charges proffered by the prosecution.

In his second point on appeal, Appellant argues the trial court committed plain error in failing to declare a mistrial or to admonish the prosecuting attorney before the jury and provide the jury with a remedial instruction after the prosecutor twice told jurors in summation that defense counsel had lied to them, because that disparagement of counsel resulted in manifest injustice and a miscarriage of justice and deprived Appellant of his right to due process and a fair trial under U.S. Const. amend XIV and Mo. Const. Art I, Section 10, in that (1) the evidence of Appellant's guilt was marginal at best, (2) the prosecuting attorney enjoys unique trust from the jury because of his quasi-judicial status, and (3) his disparagement of defense counsel was unfounded and likely to have an effect on the jury's verdict in this close case.

In his third point on appeal, Appellant argues the trial court erred in overruling Appellant's objection to testimony by Dr. Berglar regarding the frequency with which he found sexual trauma evidence in other emergency room examinations he had conducted, because evidence of the presence or absence of evidence in other cases was irrelevant in this case, in that the evidence did not tend to prove any fact material to the issues in this case and its potential to prejudice Appellant by making jurors more likely to find O.B. credible substantially outweighed whatever theoretical probative value it might have.

## Discussion

### Point I—Juror Challenges for Cause

During the prosecutor's voir dire examination, the prosecutor asked the panel members if they had been the victim of a sexual assault or had a close friend or family member who had been the victim of a sexual assault. L.L. and C.L. were two of the panel members that responded affirmatively.

L.L. reported that she had been sexually assaulted by a stranger who was hitchhiking approximately 15 years earlier and that no one had been prosecuted. In response to the prosecutor's questioning, L.L. indicated that this was not something she still thought about. L.L. responded affirmatively that she would follow the court's instructions and could be fair to both parties. Later, defense counsel made additional inquiries of L.L., asking:

[Defense Counsel] ... Is there anything about that that you think during the course of the trial if issues would be similar, or if things would come up that you think would effect [sic] you in any way?

[A.] No, not at all.

[Defense Counsel] I guess our concern would be if you said, well I can't go on with the case or anything like that, if that brought back memories for me, or anything like that?

[A.] No.

[Defense Counsel] Okay. Same question on the sentencing range. Any issues with respect to that?

[A.] No, sir, not at all.

[Defense Counsel] Considering the minimum issues?

[A.] No.

[Defense Counsel] Thank you. I think we are cool there.

C.L. reported that his wife had been sexually assaulted when she was a child by a family member, possibly her stepfather. C.L. stated that he was familiar with the facts of his wife's experience but that she did not continue to discuss it. C.L. stated that his wife's experience would not affect his ability to follow the court's instructions and that he could be impartial. In response to questioning from defense coun-

sel, C.L. stated that his wife's experience would not affect him during trial and would not make him favor one party over the other. C.L. indicated that he could consider the minimum range of punishment during the sentencing phase.

Defense counsel argued to the trial court that those panel members who had close family experiences with sexual abuse should be stricken for cause even if the veniremember stated that he or she could follow the court's instructions. The court denied defense counsel's request to strike all such veniremembers. Both L.L. and C.L. served on the jury and concurred in the verdicts. Appellant argues on appeal that the trial court erred in failing to sustain his motion to strike veniremembers L.L. and C.L. for cause.

■ The defense's challenge to a prospective juror's qualifications during voir dire may constitute grounds for the granting of a new trial or the reversal of a conviction only when the prospective juror actually serves on the jury and participates in the verdict rendered against the defendant. Section 494.480.4 RSMo 2008; *State v. Gill*, 167 S.W.3d 184, 194–195 (Mo. banc 2005). "To qualify as a juror, the venireperson must be able to enter upon that service with an open mind, free from bias and prejudice." *State v. Ervin*, 835 S.W.2d 905, 915 (Mo. banc 1992).

■ The trial court has wide discretion in determining the qualifications of a prospective juror, and we will not disturb the court's ruling unless it is clearly erroneous. *Ervin*, 835 S.W.2d at 915. The trial court is in a substantially better position than this court to determine a challenge for cause and all doubts are resolved in favor of the trial court's ruling. *State v. Treadway*, 558 S.W.2d 646, 649 (Mo. banc 1977). As the party seeking to strike these panel members, it was Appellant's burden to probe into the areas he consid-

ered grounds for disqualification during voir dire. *Ervin*, 835 S.W.2d at 916–17.

■ At trial and on appeal, Appellant contends that every prospective juror that has been the victim of, or is a close relative of a victim of, sexual assault should be automatically eliminated, for cause, from sitting on a jury for a trial involving allegations of sexual assault. While it is beyond dispute that sexual assault can have a profound impact on its victims, Appellant's contention that the exposure to sexual assault automatically renders an individual unqualified to serve on such a jury is without basis in fact or law. The courts will not assume that an entire category of people are simply incapable of serving on a jury fairly and impartially. Instead, voir dire is the method by which a prospective juror's qualifications are determined. The trial judge has the duty of evaluating the venire's responses and determining whether their views would prevent or substantially impair their ability to perform as jurors. *State v. Deck*, 303 S.W.3d 527, 535 (Mo. banc 2010).

■ Here, voir dire revealed experiences, *i.e.*, exposure to sexual assault, which may cause an individual to be biased or prejudiced on issues involving sexual assault and may prevent that individual from being able to serve fairly and impartially as a juror on a trial involving such allegations. However, because a juror falls into the category of people that *may* have a propensity to be biased on a particular subject does not mean that he or she is, in fact, biased. Counsel for both sides questioned the veniremembers without limit, some members indicating that they could serve fairly and impartially while others indicating that they could not. L.L. and C.L. both stated unequivocally that they could be a fair and impartial juror and that they could follow the court's in-

structions. Appellant has not demonstrated that L.L. and C.L.'s exposure to sexual assault prevented or substantially impaired them from performing their duties as jurors. The trial court did not abuse its discretion in refusing to strike L.L. and C.L. for cause.

Appellant also argues that the trial court erred in failing to strike L.L. and C.L. for cause without making an independent examination into the jurors' qualifications beyond that made by the attorneys.

 Appellant is correct that the trial judge has the duty of determining whether a challenged venireperson is qualified to serve as a juror and that a venireperson may not pass upon his own qualifications to serve. *State v. Thompson*, 541 S.W.2d 16, 17–19 (Mo.App. W.D.1976). However, the court only has a duty to make an independent inquiry when the venireman is equivocal about his ability to be fair and impartial. *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990).

While the court in the instant case did not independently examine L.L. and C.L., nothing in either venireperson's responses to counsels' questions indicated that they could not perform their duties as jurors in accordance with the court's instructions; thus there is no basis to believe that an independent examination by the court was necessary.

Appellant has not demonstrated that L.L. and C.L.'s experiences prevented or substantially impaired them from performing their duties as jurors in accordance with the court's instructions. The trial court did not err in not striking L.L. and C.L. for cause without making an independent inquiry into the jurors' qualifications. Appellant's Point I is denied.

### Point II—Closing Argument

During closing arguments, the defense argued at length that O.B. had made numerous inconsistent statements throughout the investigation and at trial, and that these inconsistencies were evidence that the allegations were entirely made up and that O.B. was lying. Defense counsel also argued that by amending the information the State was "changing the game" and doing "anything to get a conviction."

During its rebuttal, the State argued:

[The State]: ... You remember yesterday when he kept approaching her and he kept showing her those preliminary hearing transcripts? And he kept showing her those deposition transcripts? And every time she said I don't know, he clarified. She didn't contradict herself, she would say, I don't know, I don't think about it, and he would clarify it. The deposition transcript that [O.B.] took last year, she specifically said that [Appellant] had intercourse with me one time. You have been lied to. You have been lied to by the defense attorney. Because yesterday she testified, after he had it clarified with her, and her deposition transcript of last year, she talked about sexual intercourse one time. He made a big deal about how oh, this is the first time she has ever said it. He lied to you. And it's not comfortable for me to say that.

[Defense Counsel]: I would object ... it is a misstatement. She said attempted for the first time ...

THE COURT: Sustained.

. . .

[The State]: ... It's not easy to hear up there. But her accounts of all of those instances are consistent. The only thing that is slightly problematic are the sexual description terms for count seven. He hasn't blown a hole in anything with regards to counts one through six. And

it is not all or nothing. He was lying to you. You have to consider—

[Defense Counsel]: Objection, Your Honor, to the mis—just personal attack on the attorney. I think that's improper argument.

THE COURT: Sustained.

■ On appeal, Appellant contends that the trial court committed plain error in failing to *sua sponte* declare a mistrial or to admonish the prosecuting attorney before the jury. Under plain error review, this Court must first determine whether the trial court actually committed an evident, obvious, and clear error that affected a substantial right. Rule 30.20;[1] *State v. Washington,* 260 S.W.3d 875, 879 (Mo.App. E.D.2008). Then, we must determine whether the error resulted in manifest injustice or a miscarriage of justice. *Washington,* 260 S.W.3d at 879.

■ The parties are afforded substantial latitude during closing arguments, and the trial court has broad discretion in determining when counsel exceeds the permissible scope of argument. *State v. Kee,* 956 S.W.2d 298, 303 (Mo.App. W.D.1997). Improper closing arguments that are reviewed under plain error do not constitute reversible error unless the improper remark had a decisive effect on the outcome of the trial. *State v. Chism,* 252 S.W.3d 178, 186 (Mo.App. W.D.2008). Appellant has the burden of demonstrating that there is a reasonable probability that the verdict would have been different absent the improper argument. *Id.*

■ The State may not argue matters not in evidence and statements that defense counsel acted improperly, without basis in the record, degrade the defense and are error. *State v. Greene,* 820 S.W.2d 345, 347 (Mo.App. S.D.1991). Here, the prosecutor's rebuttal argument that defense counsel had lied was based upon the prosecutor's interpretation of the evidence, namely that defense counsel was not being truthful in arguing that O.B.'s testimony was wholly inconsistent with her prior statements. The prosecutor's argument did not reference matters outside the record, and the jurors were capable of determining which characterization of the testimony was accurate.

In addition, the State's comments were made solely in response to defense counsel's closing argument that O.B. was lying and that the State would do anything to get a conviction. *State v. Davenport,* 924 S.W.2d 6, 12 (Mo.App. E.D.1996) ("When responding to an issue raised in the defendant's closing argument, the prosecutor can go further than the normal bounds of closing arguments.").

■ "Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way." *State v. Albanese,* 9 S.W.3d 39, 51 (Mo.App. W.D.1999). Although the trial court did not *sua sponte* take additional remedial efforts beyond that requested by defense counsel, the jury was instructed that counsels' arguments were not evidence, that they should disregard questions and items for which the court sustains an objection, and that it was the jury's duty to determine the facts from the evidence presented.

Based on the foregoing, the trial court did not plainly error in failing to *sua sponte* declare a mistrial as a result of the State's closing argument. Appellant's Point II is denied.

### Point III—Admission of Irrelevant Testimony

At trial, Appellant called Dr. Berglar to testify as to the physical findings of the pelvic examination he conducted on O.B. in

---

**1.** All rule references are to Mo. R.Crim. P.2008, unless otherwise indicated.

February 2006. Dr. Berglar did not find any evidence of trauma, and testified that the results of the examination were normal. During the State's cross-examination, Dr. Berglar testified that a lack of physical examination findings does not rule out penetration. Dr. Berglar testified that he had performed approximately 30 pelvic examinations during his tenure at St. Anthony's Hospital. The State then asked, over the defense's objection:

Q. As you sit here today, do you have a recollection of how many that you had physical findings on?

A. I can't give you an absolute number. But, the overwhelming majority would have no physical exam findings. Now remember, these are cases of alleged sexual abuse.

Q. Right.

A. As a physician, on the front end of the whole thing, I have no idea whether anything happened or not in any of these cases, this happened and that happened from the mother or the child or whatever, but the overwhelming majority had no physical exam findings of sexual abuse.

On appeal, Appellant contends the trial court erred in allowing the admission of Dr. Berglar's testimony regarding his physical findings in other cases because it had no probative value and an abundant potential for prejudice to Appellant.

The trial court has broad discretion on the determination of the admissibility of evidence and we will not reverse the court's ruling absent an abuse of discretion. *State v. Mozee,* 112 S.W.3d 102, 105 (Mo.App. W.D.2003). The trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." *State v. McGowan,* 184 S.W.3d 607, 610 (Mo.App. E.D.2006).

We review the trial court's admission or exclusion of evidence for prejudice and not mere error, and will affirm the court's ruling unless it was so prejudicial that it deprived the defendant of a fair trial. *Mozee,* 112 S.W.3d at 105.

To be admissible, evidence must be logically and legally relevant. *State v. Anderson,* 306 S.W.3d 529, 538 (Mo. banc 2010). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* Evidence is legally relevant when its probative value outweighs any prejudice. *Id.*

Appellant acknowledges that medical evidence which might establish involvement in sexual activity reflected upon the reliability of O.B.'s testimony, and that Dr. Berglar's testimony regarding why evidence of sexual activity might not be present had a logical nexus to O.B.'s credibility. However, Appellant contends that allowing Dr. Berglar to testify that he failed to find medical evidence in the overwhelming majority of his other examinations had no tendency to prove or disprove any issue in this case.

Appellant relied on Dr. Berglar's testimony that there were no physical findings in arguing that O.B. was lying, stating that "the medical evidence blows her out of the water." Dr. Berglar's testimony was logically relevant to negate the inference raised by Appellant that the lack of physical findings in O.B.'s pelvic examination made O.B.'s allegations of sexual abuse less probable. The State was entitled to introduce evidence that a normal pelvic examination did not refute O.B.'s allegations.

In addition, any alleged potential prejudice was substantially limited by Dr. Berglar's testimony regarding the qualifications of his findings. Dr. Berglar testified that while there were no physical examination findings in the overwhelming majority of

his cases, these were all cases of alleged sexual abuse. Based on this testimony the jury could have concluded that that the lack of physical evidence does not exclude the possibility of penetration, or that the majority of girls who alleged that they have been sexually abused are not truthful. The former conclusion is cumulative of other evidence presented, while the latter is beneficial to Appellant.

The trial court did not abuse its discretion in admitting Dr. Berglar's testimony concerning his conclusions in the pelvic examinations he conducted in other cases. Appellant's Point III is denied.

*Conclusion*

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, and LAWRENCE E. MOONEY, JJ., concur.