**STATE of Missouri, Respondent,**

v.

**Robert E. SMITH, Appellant.**

**No. WD 71277.**

Missouri Court of Appeals, Western District.

Sept. 30, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 1, 2011.

Application for Transfer Denied Dec. 20, 2011.

Frederick J. Ernst, Kansas City, MO, for appellant.

Timothy A. Blackwell, Jefferson City, MO, for respondent.

Before DIVISION FOUR: LISA WHITE HARDWICK, Chief Judge, Presiding, KAREN KING MITCHELL, Judge and DONALD NORRIS, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

Robert Smith appeals his conviction by jury on five counts of first-degree statutory sodomy. Smith contends the circuit court erred in admitting evidence of his alcohol use and instructing the jury on voluntary intoxication. Smith also contends the evidence was insufficient to support his conviction on the statutory sodomy charges in Count I and Count IV. For reasons explained herein, we affirm in part and reverse in part.

FACTUAL AND PROCEDURAL HISTORY

During the spring and summer of 2007, Smith lived in a home with his girlfriend, Katie, their one-year old son, L.S., and Katie's three-year-old daughter, H.A.[1] Although Smith is not H.A.'s biological father, the child referred to Smith as "Daddy Robbie."

Smith and Katie generally worked opposite shifts so that one of them could be home with the children. Katie's mother ("Grandmother") would also babysit the children from time to time.

On August 18, 2007, Grandmother was giving H.A. a bath when she noticed that H.A. had a toy kazoo sticking out of her vagina. Grandmother asked H.A. what

[1.] H.A.'s date of birth is September 3, 2003.

she was doing. H.A. responded that "Daddy" had licked his fingers and put them inside her "potty." H.A. also said that she "licked Daddy's potty" and "white stuff came out of Daddy's potty." H.A. confirmed that she was referring to "Daddy Robbie" rather than her biological father.

Grandmother called to notify Katie about H.A.'s conduct and statements. Katie left work and took H.A. to Children's Mercy Hospital, where she was interviewed by a social worker. H.A. told the social worker that Daddy Robbie had touched her potty. H.A. circled a diagram indicating that she touched Daddy Robbie's penis. She also told the social worker that she had been touched with a toy.

A few days later, H.A. was interviewed by investigators at the Children's Protection Center. During the interview, H.A. referred to her buttocks as her "body" and her vagina as her "potty." H.A. said that Smith had touched "inside here," pointing to her buttocks, and that he touched "in my hole … in my little circle" on her vagina and buttocks. She stated that Smith made her lick his penis and that "white stuff" came out of his penis. She further stated that Smith had touched her vagina with a dino toy.

The State charged Smith with five counts of first-degree statutory sodomy. The indictment alleged that Smith had deviate sexual intercourse with H.A. by placing a toy on her genitals (Count I), by placing his genitals on her hand (Count II), by placing his hand on her genitals (Count III), by placing his hand on her anus (Count IV), and by placing his genitals on her mouth (Count V). The indictment further alleged that the acts of sodomy occurred during the period of April 24, 2007 through August 18, 2007.

Prior to trial, Smith filed a motion in *limine* to exclude any evidence regarding his drinking habits or his behavior while under the influence of alcohol. The State acknowledged that it intended to present evidence of Smith's excessive alcohol use and his admission that he might not remember sexually abusing H.A. if he had been under the influence of alcohol. Smith argued that such testimony was irrelevant and inadmissible as evidence of uncharged misconduct and bad character. The State responded that the evidence of alcohol use was relevant to Smith's own explanation of his culpability for the abuse. The court denied the motion in *limine*.

At trial, the State presented testimony about the abuse allegations from H.A., Katie, Grandmother, Katie's stepfather, and the social workers and investigators that interviewed H.A. The State also presented a videotape of H.A.'s interview at the Child Protection Center.

The trial court overruled Smith's continuing objections to any evidence of his alcohol consumption and related behavior. During the State's case, Katie testified that Smith "started drinking every evening between six and twelve beers, sometimes more" during July 2007. She said Smith was frequently drunk and would urinate on the furniture or leave food to burn in the oven when he passed out.

Katie also testified that she asked Smith about the abuse several times after H.A. told her Grandmother about it on August 18, 2007. Smith usually responded by saying, "I would never do anything like that. I love you guys and I care about you guys." But Katie said, at one point, Smith was unsure about whether he had abused H.A. "because he had remembered when he drinks[,] he does have black-outs and he doesn't know what happens when he blacks out."

Grandmother testified that she visited the home one evening, during the spring

or summer of 2007, while Katie was at work. Entering through the open front door of the home, Grandmother saw Smith "passed out drunk on the couch" and H.A. "was basically babysitting" her one-year old brother. Grandmother took the children home with her because Smith was unresponsive after she called his name and tapped him several times. On another occasion during that same period, Grandmother planned to drop off H.A. at the home, but she found Smith intoxicated after he consumed at least nine beers. Grandmother decided to stay at the home with H.A. until Katie returned from work. Katie's stepfather testified about Katie's concern that Smith might be an alcoholic because he generally consumed about six beers a night.

Over Smith's objection, the trial court gave the following jury instruction on voluntary intoxication, pursuant to MAI–CR 310.50:

> The State must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

The jury returned a guilty verdict against Smith on all five counts of first-degree statutory sodomy. The court sentenced Smith to concurrent twelve year prison terms on each count. Smith appeals.

## ANALYSIS

### Evidence of Alcohol Use

In Point I, Smith contends the circuit court erred in admitting testimony regarding his alcohol abuse and related behavior because the evidence was not legally or logically relevant and violated his right to be tried only on the charged offenses.

Smith argues the "bad character" evidence was improper and unfairly prejudicial in portraying him as "a drunk ... and neglectful parent."

A trial court has broad discretion in determining the admissibility of evidence, and we will not reverse absent an abuse of discretion. *State v. Garvey*, 328 S.W.3d 408, 417 (Mo.App.2010). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration. *Id.* We review the trial court's evidentiary determinations for prejudice, not mere error, and will affirm unless the ruling materially affected the outcome of the trial. *State v. Johnson*, 207 S.W.3d 24, 42 (Mo. banc 2006).

A defendant has the right to be tried only on the offense for which he is charged. *State v. Barriner*, 34 S.W.3d 139, 144 (Mo.banc 2000). "As a general rule, 'evidence of uncharged misconduct is inadmissible for the purpose of showing the propensity to commit such crimes.'" *Id.* (*quoting State v. Bernard*, 849 S.W.2d 10, 13 (Mo.banc 1993)). However, if such evidence is logically relevant in that it has some legitimate tendency to directly establish the defendant's guilt of the charged offense, it may be admissible. *State v. Blakey*, 203 S.W.3d 806, 811 (Mo.App. 2006). The evidence must also be legally relevant in that its probative value must outweigh its prejudicial effect. *Id.*

Evidence of prior uncharged misconduct is admissible on a limited basis when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the person charged with the commission of the crime on trial. *State v. Berwald*, 186 S.W.3d 349, 358 (Mo.App.2005). A related exception is recognized for evidence of un-

charged misconduct that is part of the circumstances or the sequence of events surrounding the offense charged, or the "*res gestae.*" *Blakey,* 203 S.W.3d at 812. This evidence is admissible to present a complete and coherent picture of the criminal events that transpired. *Id.* "Generally, acts, statements, occurrences, and the circumstances forming part of the main transaction may be shown in evidence under the *res gestae* rule where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue." *State v. Davis,* 226 S.W.3d 167, 170–71 (Mo.App.2007). The term "*res gestae*" also includes:

> [t]hings done, or … the facts of the transaction; … the surrounding facts of a transaction explanatory of an act or showing a motive for acting; … matters incidental to a main fact and explanatory of it, including acts and words which are so closely connected with a main fact as will constitute a part of it, and without knowledge of which the main fact might not be properly understood.

*Id.* at 170 (quoting *State v. Jones,* 256 S.W. 787, 791 (Mo.1923)).

▇ The State argues that evidence of Smith's alcohol-related behavior was admissible to show his own explanation of his culpability for the charged offenses. We agree. Katie testified that when she confronted Smith with the allegations of abuse, he initially denied any misconduct but eventually acknowledged that he was unsure whether he abused H.A. because he blacks out when he drinks and doesn't remember what happened. This testimony addressed a main fact in issue—whether Smith sodomized H.A.—and provides an explanation as to how he could have committed the crime without remembering that it occurred. Smith's statement was made in direct response to questioning about the abuse and is therefore part of the sequence of events surrounding the offense. The statement is admissible under the *res gestae* rule because it helps to present a more coherent picture of Smith's alleged involvement in the crime.

Given Smith's acknowledgement that he would not remember committing the crime if he was drinking, the testimony of other witnesses concerning the frequency and results of his alcohol consumption also provided important background information. Katie's recollection that Smith was frequently drunk during July 2007 and consumed six to twelve beers nightly was logically relevant to show that there were many occasions when Smith could have abused H.A. while he was under the influence of alcohol. Similarly, Smith's admission that he "blacks out" from drinking was affirmed by Grandmother's testimony that she saw him passed out on the couch when he was supposed to be babysitting his infant son. On another occasion, Grandmother testified that she could not leave H.A. at home with Smith because he was too intoxicated to take care of her. This collective evidence was also legally relevant, in that its probative value in establishing the circumstances under which the acts of sodomy likely occurred outweighed any prejudice from showing that Smith had a propensity to drink excessively.

"A tension necessarily exists between excluding evidence of uncharged [misconduct] and admitting evidence to show the complete and coherent picture of the crime at issue." *State v. Morrow,* 968 S.W.2d 100, 108 (Mo.banc 1998). Consideration of such evidence requires a "balancing of the effect and value" of the evidence and "rests within the sound discretion of the trial court." *Bernard,* 849 S.W.2d at 13. In this case, we must defer to the trial

court's superior vantage point in weighing the probative value of evidence that linked Smith's admitted drinking habits to the circumstances of the charged offenses. We find no abuse of discretion.

■ Even if we were to conclude that the trial court erred in admitting the evidence of Smith's alcohol use, reversal would not be warranted unless the error was so prejudicial that it affected the jury's verdict. The record reflects that the State presented a strong case against Smith on the specific allegations of sodomy. H.A. testified at trial and her out-of court statements were attested to by her Grandmother, Katie's stepfather, and the social workers and investigators who interviewed her. She repeatedly described incidents when Smith touched her vagina and her anus, referring to both areas as her "potty." She explained that Smith touched her vagina with his fingers and with a toy. H.A. told her Grandmother and the investigators that Smith made her lick his penis and "white stuff" came out. She had difficulty remembering how often the incidents occurred, but she always gave the same explanation of the body parts involved and the nature of the contact. The State's evidence and arguments focused on the remarkable consistency in H.A.'s detailed descriptions of abuse in testifying at trial, in talking with her relatives, and during investigative interviews.

As compared to the evidence of abuse, the State offered testimony from three witnesses about Smith's alcohol use but did not draw extensive attention to it. During closing arguments, the prosecutor referenced the intoxication issue only once in summarizing Katie's testimony:

> She [Katie] also told you a little bit about Robert Smith. She told you that Robert Smith drinks too much, in her opinion. She told you that he had six to 12 beers a night in that July, '07 time frame. And that he passed out several times and he urinated on the furniture. She also told you that when questioning him, he said, "You know, I don't think I did that, but sometimes I don't remember what I do when I am drunk."

The prosecutor did not mention the additional testimony from Grandmother and Katie's stepfather regarding Smith's drinking habits. The prosecutor's brief reference to alcohol use was limited to the time period when the abuse occurred and was carefully linked to Smith's response to the allegations of abuse. The argument was not egregious or voluminous in generally emphasizing Smith's "bad character" as a neglectful parent or his propensity for intoxication. The issue of alcohol use was not presented as a primary or predominate factor for the jury's consideration. Smith was not prejudiced by the admission of this evidence because the jury was more likely persuaded to convict him based on the strength and consistency of H.A.'s graphic testimony and statements about the abuse she suffered. We find no error and deny the point on appeal.

## Jury Instruction on Voluntary Intoxication

In Point II, Smith contends the circuit court erred in overruling his objection and instructing the jury on voluntary intoxication because there was no evidence that he was intoxicated or had consumed alcohol at the time of the alleged abuse. Smith further argues that the instruction likely confused and misled the jury to believe that he had admitted the sodomy charges and sought to escape liability based on intoxication.

■ Jury instructions "must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Avery*, 275 S.W.3d 231, 233 (Mo. banc 2009). On appeal, we will

reverse a verdict on grounds of instructional error only if the offending instruction misdirected or confused the jury and resulted in prejudice to the defendant. *Id.* In a criminal case involving evidence of voluntary intoxication, the court must instruct the jury about the limited purpose for which the evidence can be considered:

> Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person was in a voluntarily intoxicated or drugged condition has been received into evidence.

§ 562.076.3.[2] The appropriate instruction to satisfy this requirement is MAI–CR 310.50, which states:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that (an intoxicated) (or) (a drugged) condition (whether) from (alcohol) (or) (drugs) (or) ([*Identify other substance.*]) will not relieve a person of responsibility for his conduct (unless such condition was involuntarily produced.)

The purpose of this instruction is to ensure the jury's understanding that intoxication is not a defense or explanation that excuses the defendant of responsibility for criminal conduct. *Avery,* 275 S.W.3d at 234. To support submission of the instruction, there need only be evidence that the defendant was voluntarily intoxicated. *State v. Owsley,* 959 S.W.2d 789, 795 (Mo.banc 1997).

As discussed in Point I, the State presented evidence of Smith's voluntary intoxication, and the trial court did not err in admitting such evidence. The jury heard testimony that Smith was unsure about whether he sodomized H.A. because he would not remember such conduct if he had been drinking at the time it occurred. There was testimony that Smith drank heavily and was intoxicated every evening beginning in July 2007. This period of heavy drinking fell within the time span of April 24, 2007 and August 18, 2007, when the acts of sodomy took place. This collective evidence was sufficient to establish a reasonable inference that Smith sexually abused H.A. while he was voluntarily under the influence of alcohol.

In light of this evidence, the State requested a jury instruction on voluntary intoxication pursuant to MAI–CR 310.50. The pattern instruction was supported by substantial evidence and was necessary to avoid any confusion regarding the legal effect of Smith's admission to heavy drinking. *Avery,* 275 S.W.3d at 235. The trial court was obligated to instruct the jury that it could not consider Smith's voluntary intoxication as a defense to the sodomy charges. *State v. Johnson,* 95 S.W.3d 221, 225–26 (Mo.App.2003) (MAI–CR 310–50 "required" where there is evidence of voluntary intoxication). Accordingly, the court did not err in overruling Smith's objection and instructing the jury as requested. "If an instruction is an accurate statement of law and supported by the evidence ... there is no prejudice." *Avery,* 275 S.W.3d at 233. Point II is denied.

**Sufficiency of Evidence**

In the remaining points on appeal, Smith contends the evidence was insufficient to support his convictions for first-

---

**2.** All statutory references are to Revised Statutes of Missouri (2000) as updated by the Cumulative Supplement (2009) unless otherwise noted.

degree statutory sodomy on Counts I and IV. Our review requires a determination of whether the State presented sufficient evidence from which a reasonable juror could have found Smith guilty beyond a reasonable doubt on these counts. *State v. Olten,* 326 S.W.3d 137, 139 (Mo.App.2010). In so doing, we view the evidence and inferences in a light most favorable to the verdict and must disregard all contrary evidence and inferences. *Id.*

A person commits first-degree statutory sodomy "if he has deviate sexual intercourse with another person who is less than fourteen years old." § 566.062.1. The law defines "deviate sexual intercourse" as:

> [A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim[.]

§ 566.010(1).

Count I of the indictment alleged that Smith committed first-degree statutory sodomy by having deviate sexual intercourse with H.A. when he "placed a toy on [her] genitals." At trial, the circuit court instructed the jury to find Smith guilty on Count I if it found that he "knowingly placed a toy *in* the genitals" of H.A. (emphasis added).

■ In Point III on appeal, Smith contends his Count I conviction must be reversed because there was no evidence that he penetrated H.A.'s vagina with a toy. The State concedes there was no evidence to support a finding that Smith placed a toy *in* H.A.'s genitals. Thus, the conviction for first-degree statutory sodomy is not supported by the necessary evidence of penetration.

The State asserts, however, that Smith is guilty of the lesser included offense of child molestation because the evidence established that he touched H.A.'s vagina with a toy. Pursuant to Section 566.067, "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact. "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person ... or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" § 566.010(3).

■ Our court has recognized that first-degree child molestation is a lesser-included offense of first-degree statutory sodomy. *State v. Herndon,* 224 S.W.3d 97, 100 (Mo.App.2007). Upon reversing a conviction of a greater offense for insufficient evidence, we are authorized to enter a conviction on a lesser offense if: (1) the evidence was sufficient to find each element of the lesser offense; and (2) the jury was required to find those elements to enter the ill-fated conviction on the greater offense. *Id.*

There is no dispute that the State presented sufficient evidence of Smith's "sexual contact" with H.A. to prove the elements of first-degree child molestation. But Smith contends that we cannot enter judgment on this lesser-included offense because the jury would have been required to make different findings. Smith points out that the jury erroneously found penetration. If that finding is removed, Smith argues there would be an insufficient basis upon which to convict him of child molestation. We disagree.

■ By convicting Smith on Count I, the jury found that he knowingly placed a toy in H.A.'s genitals. Although there was no evidence of such penetration, Smith acknowledges in his brief that there was evidence to show he touched H.A.'s vagina with a toy. The jury could not have found that Smith penetrated H.A.'s vagina with the toy, without also finding he had touched her genitals. Because the jury's findings were sufficient to establish that Smith had sexual contact with H.A. when she was under the age of fourteen, he is guilty of first-degree child molestation.

Point III is granted. We reverse the judgment of conviction on Count I and remand to the circuit court for entry of a conviction and sentence for first-degree child molestation.

In his fourth and final point on appeal, Smith contends his Count IV conviction for first-degree statutory sodomy must be reversed because there was no evidence that he penetrated H.A.'s anus, as required under Sections 566.010(1) and 566.062. The Count IV indictment alleged that Smith committed sexual deviate intercourse by "plac[ing] his hand on the anus of [H.A.][.]" This is the same conduct that was submitted to the jury in the verdict director for Count IV.

The State effectively concedes that Smith's conduct in placing his hand on H.A.'s anus did not satisfy the definition of deviate sexual intercourse. The State argues, instead, that the evidence established that Smith did, in fact, penetrate H.A.'s anus with his finger and such evidence satisfied the definition of sexual deviate intercourse and the elements of first-degree statutory sodomy. Based on the sufficiency of the evidence, the State urges us to affirm the Count IV conviction.

■ We agree that there was sufficient evidence of penetration, but we cannot uphold the conviction because the jury never made a finding on this critical element of statutory sodomy. Despite the evidence presented at trial, the jury instruction on Count IV did *not* hypothesize that Smith penetrated H.A.'s anus. The jury was never asked to find—and consequently did not find—that penetration occurred. Contrary to the State's argument, this was not merely an instructional error that Smith failed to preserve. The State utterly failed to submit the offense that it intended to charge. "The facts as alleged and submitted to the jury by the state . . . were insufficient to sustain a conviction for statutory sodomy." *Herndon*, 224 S.W.3d at 100.

Nonetheless, as discussed with regard to Count I, the record is sufficient to enter a conviction on the lesser-included offense of first degree child molestation. Section 566.067.1. In Count IV, the State charged Smith with placing his hand on H.A.'s anus, and the jury found him guilty of that conduct. The evidence and findings established that Smith had sexual contact with H.A., who was under the age of fourteen, and thereby committed first-degree child molestation.

Accordingly, Point IV is granted. We reverse the judgment of conviction on Count IV and remand to the circuit court for entry of a conviction and sentence for first-degree child molestation.

CONCLUSION

We reverse the judgment of conviction on Counts I and IV and remand those counts to the circuit court for entry of conviction and sentencing on first-degree child molestation on each count. In all other respects, the judgment is affirmed.

All Concur.