

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102581 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | 1211-CR06531-01 |
| | ) | |
| MATTHEW R. BURNETT, | ) | Honorable Jon A. Cunningham |
| | ) | |
| Appellant. | ) | Filed: February 2, 2016 |

Matthew R. Burnett ("Defendant") appeals the judgment entered upon a jury verdict convicting him of two counts of first-degree burglary and two counts of first-degree child molestation. We affirm.

### I.     BACKGROUND

#### A.     Evidence Presented at Defendant's Jury Trial

Defendant was charged with and convicted of the four counts referenced above, and he does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the verdict, the evidence presented at Defendant's jury trial revealed the following.

On December 12, 2012, H.G., who was thirteen years old, and her little sister, who was eight years old, were home alone while their mother was at work. At around 5:30 p.m., when H.G. was in the living room and her sister was taking a bath, H.G. heard a loud noise from the

kitchen, and she saw the door fling open. A man later identified as Defendant then came into the home. Defendant grabbed H.G. by the arms and told her to sit, which she did, and then Defendant said "all clear." At that point, a man who lived in the neighborhood, whom H.G. knew as "Bob" and who was later identified as Bob Mohrmann,[1] came in the back door.

Bob stayed in the kitchen while Defendant looked around the house. After Defendant looked around the house, he and Bob left out the backdoor. Subsequently, Defendant came back into the house, held H.G. down on his lap, and touched her breasts and vagina over her clothing. Defendant also tried to touch H.G. under her pants, but she struggled against him.

H.G. started running towards the front door, but she fell. Defendant got on top of her, and put his hands on her face, covering up her mouth and nose. H.G. kicked, screamed, and tried to punch Defendant, and he eventually left the house. H.G. and her sister then went to a neighbor's house for help, and the neighbor called the police.

When the police arrived, H.G. told them what happened and pointed out where she thought Bob lived. The police went to Bob's house, and Bob told the police it was Defendant's idea to rob H.G.'s house, Defendant kicked the door in, and Defendant was located in a house across the street. The police went to the house across the street, found Defendant, and took him into custody. Later that evening, H.G. identified Defendant and Bob as the men who broke into her house, and she identified Defendant as the man who held her down and touched her breasts and vagina over her clothing.

Bob testified at trial that Defendant came by his house on the day of December 12, 2012, brought rum, and the two men sat at Bob's house and "drank a little bit." Bob stated he drank

_____

[1] For purposes of this opinion, we will refer to Bob Mohrmann by his first name for clarity and ease of reading. No disrespect is intended.

about one-third to one-half of a bottle of rum but did not know exactly how much Defendant drank.

In addition, Detective Brett Jansen from the St. Charles County Sheriff's Department testified at Defendant's trial regarding his interview of Defendant on the night of the crimes involving H.G. Detective Jansen stated he noticed during the interview that Defendant's speech was slurred and Defendant "had an odor on his breath of what [Detective Jansen] considered an intoxicating beverage." Detective Jansen testified he "definitely believed that [Defendant] was intoxicated at the time." The detective testified he was very familiar with observing signs of intoxication, having previously worked in the DWI unit of the Sheriff's Department for six years. Defendant told Detective Jansen that earlier in the day, he bought a bottle of rum for Bob, but Defendant only had one "swig" and went home. However, based on Detective Jansen's observations of Defendant and his past experience, he believed Defendant did not present himself as someone who had only taken one "swig" of alcohol.

## B.    Relevant Procedural Posture

During the instruction conference, the State tendered an instruction, Instruction No. 6, which was based on and contained identical language to MAI-CR 3d 310.50 (effective October 1, 1995)[2], the Missouri approved instruction on voluntary intoxication. Over defense counsel's objection, the trial court submitted Instruction No. 6 to the jury, which provided:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct.

---

[2] Unless otherwise indicated, all further references to MAI-CR 3d 310.50 and the Notes on Use are to the version effective October 1, 1995.

The jury was also instructed, based on MAI-CR 3d 302.03 (effective January 1, 1987),[3] "[t]he [c]ourt does not mean to assume as true any fact referred to in these instructions but leaves it to you to determine what the facts are."

Subsequently, the jury found Defendant guilty of two counts of first-degree burglary and two counts of first-degree child molestation. The trial court then sentenced Defendant as a prior and persistent offender to a total of twenty-seven years of imprisonment. Defendant appeals.

## II. DISCUSSION

In Defendant's sole point on appeal, he argues the trial court erred in submitting Instruction No. 6 to the jury, which was based on and contained identical language to MAI-CR 3d 310.50. We disagree.

## A. Standard of Review

"A jury instruction must be supported by substantial evidence and the reasonable inferences to be drawn therefrom." *State v. Avery*, 275 S.W.3d 231, 233 (Mo. banc 2009). In determining whether there was sufficient evidence to support an instruction for voluntary intoxication based on MAI-CR 3d 310.50, "[w]e view the evidence and inferences in the light most favorable to the State, which was the party tendering the instruction." *State v. Drisdel*, 417 S.W.3d 773, 787 (Mo. App. E.D. 2013).

An appellate court will only reverse a case based on instructional error when an error occurs and the error misleads the jury to the prejudice of the defendant. *Avery*, 275 S.W.3d at 233. However, if an instruction contains an accurate statement of law and is supported by the evidence, there is no prejudice. *Id.* Additionally:

> [It is within] the trial court's discretion, when instructions are supported by the evidence, which instructions are necessary to avoid misleading or confusing the

---

[3] All further references to MAI-CR 3d 302.03 are to the version effective January 1, 1987.

4

jury. Accurately informing the jury concerning a point of law will limit, rather than increase, the chance of a jury being misled or confused.

*Id*. at 235.

**B.      Whether the Trial Court Erred in Submitting Instruction No. 6**

In this case, Defendant argues the trial court erred in submitting Instruction No. 6 to the jury because there was insufficient evidence Defendant was in an intoxicated condition at the time he committed the crimes involving H.G. Defendant further argues the instruction was prejudicial because it confused or misled the jury into believing Defendant was admitting to some wrongdoing and seeking to escape liability based on intoxication. Because similar arguments were addressed and found to be non-meritorious by the Missouri Supreme Court in *Avery*, 275 S.W.3d at 233-35 and by the Western District in *State v. Smith*, 353 S.W.3d 100, 106-07 (Mo. App. W.D. 2011), we find those decisions are instructive here.

In a criminal case where there is evidence of voluntary intoxication, section 562.076.3 RSMo 2000[4] requires the trial court to instruct the jury about the limited purpose for which the evidence may be considered:

> Evidence that a person was in a voluntarily intoxicated . . . condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person was in a voluntarily intoxicated . . . condition has been received into evidence.

*Smith*, 353 S.W.3d at 107 (quoting section 562.076.3). MAI-CR 3d 310.50 satisfies this requirement, providing in relevant part:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that . . . an intoxicated . . . condition . . . from . . . alcohol . . . will not relieve a person of responsibility for his conduct . . ..

---

[4] All further references to section 562.076.3 are to RSMo 2000.

5

*Smith*, 353 S.W.3d at 107 (quoting MAI-CR 3d 310.50). The purpose of an instruction based on MAI-CR 3d 310.50 is to ensure the jury understands intoxication is not a defense or an explanation which excuses the defendant of responsibility for his conduct. *Avery*, 275 S.W.3d at 234; *Smith*, 353 S.W.3d at 107. To support submission of such an instruction, it is only necessary for there to be evidence that the defendant was voluntary intoxicated.[5] *Smith*, 353 S.W.3d at 107; *see also Avery*, 275 S.W.3d at 233-35; section 562.076.3.

In this case, the State presented evidence of Defendant's voluntary intoxication, and the trial court did not err in admitting such evidence. Viewing the evidence and inferences in the light most favorable to the State, which our standard of review requires us to do, the jury heard evidence that Defendant was drinking rum with Bob on the day of the crimes involving H.G. In addition, the jury heard Detective Jansen's testimony that on the night the crimes occurred, he noticed Defendant's speech was slurred and Defendant "had an odor on his breath of what [Detective Jansen] considered an intoxicating beverage." Detective Jansen testified he "definitely believed that [Defendant] was intoxicated at the time" and also testified that based on his observations of Defendant and his past experience, he did not believe Defendant's contention that he had just taken one "swig" of alcohol earlier in the day. The preceding evidence was sufficient to establish a reasonable inference that Defendant committed the crimes involving H.G. while he was voluntarily intoxicated. Accordingly, there was sufficient evidence to support an instruction for voluntary intoxication, and Defendant's argument to the contrary has no merit.

In addition, and contrary to Defendant's other argument on appeal, we find submission of Instruction No. 6 based on MAI-CR 3d 310.50 did not confuse or mislead the jury into believing

---

[5] Although the prior Notes on Use to MAI-CR 3d 310.50 also required evidence of impairment in order to submit an instruction based on MAI-CR 3d 310.50, the Notes on Use were modified, and the current version does not contain that requirement. *Avery*, 275 S.W.3d at 234; Notes on Use to MAI-CR 3d 310.50.

Defendant was admitting to some wrongdoing and seeking to escape liability based on intoxication. This is because the jury was instructed pursuant to MAI-CR 3d 302.03 to not assume any fact referred to in the instructions and we presume the jury read and followed the instructions before it.[6] *See Avery*, 275 S.W.3d at 233-34. Moreover, as the Supreme Court found in *Avery*, "there was abundant evidence of [Defendant's] alcohol consumption to support the trial court's determination that without being instructed as to the legal effect of that evidence, the jury might well have been left to guess as to what legal effect to give that evidence." *Id*. at 235.

Based on the foregoing, the trial court did not err in submitting Instruction No. 6 to the jury. Point denied.

### III.    CONCLUSION

The trial court's judgment is affirmed.

_____
_____
ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J., and
James M. Dowd, J., concur.

---

[6] To support his argument that submission of Instruction No. 6 confused or misled the jury into believing Defendant was admitting to some wrongdoing and seeking to escape liability based on intoxication, Defendant relies on three decisions: (1) *State v. Bristow*, 190 S.W.3d 479 (Mo. App. S.D. 2006) (explicitly overruled in part by *Avery*, 275 S.W.3d at 235); (2) *State v. James*, 869 S.W.2d 276 (Mo. App. E.D. 1994); and (3) *State v. Kehner*, 886 S.W.2d 130 (Mo. App. E.D. 1994). However, those decisions "failed to consider that MAI–CR 3d 302.03 specifically instructs the jury not to assume any fact referred to in the instructions as well as the case law that the jury is presumed to have read and followed the instructions." *Avery*, 275 S.W.3d at 233-34, 234 (similarly holding with respect to the *Bristow* decision only); *see also James*, 869 S.W.2d at 278; *Kehner*, 886 S.W.2d at 134. Accordingly, *Bristow*, *James*, and *Kehner* are not controlling. *See Avery*, 275 S.W.3d at 233-34.