

# In the Missouri Court of Appeals
# Eastern District
## DIVISION II

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103131 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 1222-CR06450-01 |
| | ) | |
| LELAND HUGHES, | ) | Honorable Julian L. Bush |
| | ) | |
| Appellant. | ) | Filed: August 30, 2016 |

### I.        Introduction

Leland Hughes, ("Defendant"), appeals his conviction of first-degree burglary, first-degree robbery, two counts of kidnapping, five counts of armed criminal action, and one count of forcible rape for which he received a sentence of 43 years.[1] Defendant claims the trial court erred in denying his motion to strike his co-defendant's testimony, thereby denying Defendant his Sixth Amendment right to confrontation, and his rights under the Fourteenth Amendment to due process and right to a fair trial. Defendant additionally claims the trial court erred in denying his motion for judgment of acquittal on Counts XIX and XX (the forcible rape and accompanying

---

[1] The trial court sentenced Defendant to serve 15 years for Count I (burglary first degree), 16 years for Counts II and IV (armed criminal action), 15 years for Counts III, VII, and VIII (kidnapping), 16 years for Count IX (robbery first degree), 17 years for Count X (armed criminal action), 21 years for Count XIX (forcible rape), and 22 years for the accompanying armed criminal action, Count XX. The court ordered Defendant's felony sentences to run concurrently for 22 years, with the sentence of rape to run consecutively for 21 years, giving Defendant a total sentence of 43 years.

1

armed criminal action), arguing there was insufficient evidence to find him guilty. We affirm the trial court's decision.

## II.     Factual Background

Defendant was convicted after a two-day bench trial on July 22 and 23, 2014. Evidence at trial demonstrated on November 21, 2012, Defendant and co-defendant, Shawn Borders, broke into the home of Bryan Richardson and robbed him, forcing him, his guest Alfred Barton, and Richardson's fiancée, T.A., to the floor, while the two defendants demanded money. Defendant took Richardson's expired debit card and left Borders to stand guard over the three victims while he attempted to withdraw money from a nearby ATM. When Defendant returned he took T.A., who was in her second trimester of pregnancy, into the bedroom and raped her at gunpoint. The defendants then led Richardson and Barton into the bedroom and Richardson told them he had $800.00 in his jacket pocket. Subsequently, the defendants took turns removing valuables from the apartment and standing guard over the prisoners. Before they left, the defendants covered the victims' heads with dresser drawers and ordered them to count down from one thousand.

At trial, Kenneth Allen, Borders's grandfather and Defendant's step-grandfather, testified the defendants stored the goods at his home and identified Defendant. Each of the victims testified to the series of events, including the rape, and items that were stolen. Borders pleaded guilty to the charges and testified as a hostile witness, admitting he was with Defendant on November 21, and together they robbed the apartment. Borders initially refused to answer questions implicating Defendant in the robbery, when posed by both the prosecutor and defense counsel. However, after instruction by the judge to answer defense counsel's questions and a break, Borders testified Defendant was with him during the home invasion on cross-examination.

2

Borders also testified they were together on November 23, 2012, when they were arrested after fleeing the police. Borders stated Defendant was driving and crashed the car prior to their arrest.

The State also called several police officers to the stand, including the first responders who testified about the evidence seized from the car. These items included two t-shirts with the names of the victims and a gun with laser sights that T.A. identified as the gun used during the robbery. The State also called forensic experts who testified Defendant's DNA was found on a glove left inside the apartment by the assailants. At the close of evidence the court found Defendant guilty of burglary, robbery, two counts of kidnapping, five counts of armed criminal action, and one count of forcible rape, and sentenced him to serve a total sentence of 43 years.

### III. <u>Standard of Review</u>

Trial courts have broad discretion to admit or exclude evidence and this Court will only reverse upon a clear showing of abuse of discretion. *State v. Moffett*, 474 S.W.3d 248, 250 (Mo. App. S.D. 2015). "An abuse of discretion exists when the trial court ruling 'clearly offends the logic of the circumstance or appears arbitrary and unreasonable.'" *State v. Patton*, 419 S.W.3d 125, 133 (Mo. App. E.D. 2013) (internal quotations omitted). An appellate court will only reverse a conviction due to evidentiary error if it "was so prejudicial that it deprived the defendant of a fair trial." *State v. Evans*, 455 S.W.3d 452, 455 (Mo. App. E.D. 2014). Errors are prejudicial when "the errors are more likely than not to have affected the outcome." *Patton*, 419 S.W.3d at 133. While the admissibility of evidence is reversed only when a court finds a clear abuse of discretion, "whether a defendant's rights were violated is a question of law reviewed de novo." *State v. Aaron*, 218 S.W.3d 501, 505 (Mo. App. W.D. 2007).

## IV.    Discussion

**a. The trial court did not abuse its discretion in denying Defendant's motion to exclude testimony of co-defendant, Shawn Borders.**

"In all criminal prosecutions the accused shall enjoy the right…to be confronted with the witnesses against him." U.S. Const. Amend. VI. A defendant's Sixth Amendment right to confrontation is "one of the safeguards essential to a fair trial." *United States v. Cardillo*, 316 F.2d 606, 613 n. 4 (2d Cir. 1963). "Cross-examination of a witness is a matter of right…and its allowance is especially important in the case of a witness who is himself an admitted violator of the law." *Id*. (internal quotations omitted).

In 1982, the Missouri Supreme Court adopted the Second Circuit's holding in *Cardillo* regarding the confrontation clause and witnesses who invoke the Fifth Amendment privilege against self-incrimination. *See State v. Blair*, 638 S.W.2d 739, 754 (Mo. banc 1982). In *Cardillo*, the Second Circuit held a "conviction will be reversed if the cross-examination of government witnesses has been unreasonably limited." *Cardillo*, 316 F.2d at 611.  "However, reversal need not result from every limitation of permissible cross-examination and a witness' testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination." *Id*. A witness's testimony should be stricken in whole or in part "if the witness by invoking the privilege precludes inquiry into the details of his direct testimony[.]" *Id*. This is because a defendant who is deprived of the right to test the truthfulness of an adverse witness's direct testimony faces "a substantial danger of prejudice[.]" *Id*.

In the present case, co-defendant, Borders, initially refused to implicate Defendant when asked questions about the home invasion by the prosecution. Borders did not invoke the Fifth

4

Amendment at any point and freely answered questions about his own involvement. He would not testify as to whether he was telling the truth when he made a statement to the police that implicated Defendant.[2] Under cross-examination, Borders again refused to answer any questions implicating Defendant, stating clearly it was not because he was being asked questions by Defendant's attorney. At sidebar, Defense counsel made its first request to strike Borders's testimony from direct examination, alleging Defendant's right to confrontation had been violated. The court stated it would entertain that request if defense counsel asked the court to direct Borders to answer questions on cross, and Borders continued to refuse. The court then ordered Borders to answer defense counsel's questions and Borders asked, "If I refuse to answer the question, is that an answer?" to which the court responded:

> "That's a response. That's not an answer…You might refuse to answer the question. You might say I don't remember, or you can still refuse even though I'm telling you, you must answer. You should answer yes, no, or I don't remember. You should answer the questions truthfully. If you refuse to give an answer to the question, if that's your response as it has been before, then you will be in contempt of court, and I might impose a fine or I might place you in prison for contempt of court. That will be up to me. He's going to ask you a question. If you know the answer, I direct you to answer the question. If you don't know the answer, you can say you don't know the answer. You should make one of those responses."

After this instruction, Borders answered many of the defense counsel's questions with "I don't know." He told defense counsel he was with Defendant on the night of their arrest November 23, 2012, and Defendant was driving the car they were in when they were arrested. However, he continued to refuse to answer whether Defendant was with him on the night of the home invasion, November 21, 2012. After extensive questioning, with no change in Borders's testimony, the

---

[2] Toward the end of his direct examination, when asked what he meant when he said he was concerned with his safety, Borders replied "I'm in jail. I'm in jail. The reputation. I don't care about what a person think about me or none of that. Them type of stuff in jail don't fly. I don't expect you to understand. I don't expect you to understand to know where I'm coming from. I don't mean no disrespect whatsoever."

defense moved again to strike the entirety of his testimony under Defendant's Sixth Amendment right to confrontation.

At side bar, the attorneys explained their positions to the court. The prosecution felt the witness was answering questions, and defense counsel asserted he was parroting the responses the court informed him he could say "like refuse to answer and I don't know." Defense counsel admitted, "We're not getting any useful testimony from him whatsoever," and felt there was no way he could effectively cross-examine Borders and admitting any of his testimony as evidence against his client would violate the confrontation clause as well as Defendant's rights to due process and a fair trial. The court pointed out, "He's answered more of your questions than [the prosecutor's]. I'm not sure what [the State] got of value."

After lunch, and a conversation with his attorney, Borders was recalled to the stand and did answer defense counsel's questions, stating Defendant was with him on November 21st and went inside the home. Borders stated under oath he lied when he wrote an affidavit stating, "the things I said against [Defendant] wasn't true." On re-direct he was again ambiguous about whether he lied in his statement to the police stating, "[T]here's some truth to it."

The purpose behind excluding testimony under the Confrontation Clause is to safeguard a Defendant's right to a fair trial. Cross-examination is of premier importance in our jurisprudence and "It is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, Evidence § 1367 (3d ed. 1940). Cross-examination is an essential right and one of the safeguards to a fair trial. *Cardillo*, 316 F.2d at 613 n. 4. It is unfair for government witnesses to freely answer questions on direct then refuse to answer questions about the same subject matter on cross-examination because this leads to the substantial risk of prejudice to the defendant. *Id*. at

611. "Since the right to cross-examine is guaranteed by the Constitution, a federal conviction will be reversed if the cross-examination of government witnesses has been unreasonably limited." *Id.*

We find the court did not err in denying defense counsel's request to exclude the witness's testimony under the Confrontation Clause because Defendant's cross-examination of Borders was not unreasonably limited. The record shows Borders initially refused to implicate Defendant under both direct and cross-examination and, when he finally implicated Defendant, it was on cross-examination. The Confrontation Clause guarantees only the meaningful opportunity for effective cross-examination and not "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559 (1988). It was not an abuse of discretion for the court to allow Borders's testimony after defense counsel was able to effectively cross-examine him. Additionally, the trial court did not err by giving Defendant every reasonable opportunity to elicit the truth from the State's witness. Point denied.

**b.  Even if allowing Borders's testimony into evidence did violate Defendant's Constitutional Rights, the error was harmless beyond a reasonable doubt.**

In order for a federal constitutional error to be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). In *State v. Degraffenreid*, the Missouri Supreme Court held "error in the admission of evidence should not be declared harmless unless it is so without question." 477 S.W.2d 57, 64 (Mo. banc 1972) (overruled in part on other grounds in *State v. Harris*, 711 S.W.2d 881, 884 (Mo. banc 1986)). "The concurring opinion [in *Degraffenreid*]…made it clear that in Missouri the court must examine each case to determine if the error was harmless and hence not prejudicial." *State v. Brown*, 549 S.W.2d 336, 345 (Mo. banc 1977).[3]

---

[3] The concurring opinion in *Degraffenreid* was written by Justice Finch and with five Judges concurring. *Id.*

An examination of the evidence in this case reveals the inclusion of Borders testimony against Defendant was harmless error. The evidence against Defendant included the testimony of the three victims, who identified Defendant at trial, in photo line-ups, and one live line-up. There was the testimony of the police officers and forensic experts who responded to the scene of the defendants' car accident and bagged evidence from their car including a gun with laser sights and two t-shirts with the first names of Bryan Richardson and his fiancée, T.A. T.A. identified the gun from a photograph as the one used during the robbery, as well as the shirts as items that were in their apartment prior to the home invasion and missing afterwards. And Defendant's step-grandfather identified him and testified both Defendant and his grandson, Borders, stored goods at his home matching the description of goods taken from Bryan Richardson's apartment. Defendant's DNA was also found on a glove left inside the apartment by the assailants.

The record shows Borders was not a strong witness for the government. Defendant wants the testimony excluded because Borders initially refused to answer questions on cross-examination. However, Borders initially refused to implicate Defendant on both direct and cross-examination. When directed by judge to answer defense counsel's questions, he did admit to being with Defendant and robbing Richardson's apartment with "someone" and that other person took T.A. into the bedroom. After a break, Borders admitted under cross-examination that Defendant was with him on November 21, 2012, and Defendant went inside the home of Bryan Richardson with him. Based on the overwhelming evidence implicating Defendant, in addition to the reluctant testimony of Borders, we find that even if the court's inclusion of Borders's testimony violated Defendant's Sixth Amendment and Fourteenth Amendment rights, that it was harmless beyond a reasonable doubt.

8

**c. The court did not err in overruling Defendant's motions for judgment of acquittal as to Count XIX and Count XX, the felony rape and accompanying armed criminal action, based on the victims' identification.**

Our review of a trial court's denial of a motion for judgment of acquittal is limited to a determination of whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Bowman*, 337 S.W.3d 679, 688 (Mo. banc 2011).[4] An appellate court gives great deference to the trier of fact and does not act "as a 'super juror' with veto powers." *State v. Wolfe*, 13 S.W.3d 248, 252 (Mo. banc 2000) (abrogated in part on other grounds by *Mitchell v. Kardesch*, 313 S.W.3d 667, 678-679 (Mo. banc 2010)). When reviewing the sufficiency of evidence supporting a criminal conviction, this Court accepts as true all favorable evidence to the state and all favorable inferences that can be drawn from the evidence, and disregards all contrary evidence and inference. *Bowman*, 337 S.W.3d at 688.

Identification testimony will only be excluded when the procedure is so suggestive that there is a very substantial likelihood of misidentification. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989). Reliability is the "'linchpin' in determining the admissibility of identification testimony." *Cothran v. State*, 436 S.W.3d 247, 251 (Mo. App. W.D. 2014) (quoting *Hornbuckle*, 769 S.W.2d at 93). Reliability is assessed by a trial court under the totality of the circumstances. *Id*. The factors to be considered include:

> (1) the opportunity of the witness to view the subject at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description of the criminal given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the length of time between the crime and the identification procedure. *State v. Conrick*, 375 S.W.3d 894, 897 (Mo. App. W.D. 2012).

---

[4] In a bench trial, the court's findings of fact shall have the force and effect of the verdict of a jury. Missouri Supreme Court Rule 27.01(b) (2016).

Defendant argues on appeal that his convictions for forcible rape and armed criminal action should be overturned because there was insufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Defendant, and not Borders, committed the acts.

During the trial, T.A. testified she recognized Hughes "by the eyes" and when she heard his voice. She said she had seen Hughes twice before; once when he came to the door of their apartment looking for her husband, and a second time shortly before the home invasion when T.A. and Richardson were in their car and stopped to talk to Defendant in another car.

T.A. testified to specific acts each of the defendants did while they were in the apartment. T.A. stated Defendant had a white scarf or cloth around the lower part of his face and wore a gray hoodie. T.A. said she and the other two victims were left alone with Borders while Hughes left with her husband's bank card for five or ten minutes. She said that Borders forced her up and walked her around the apartment asking where money was and then went into the bathroom and squeezed and choked her puppy. She stated Defendant, Hughes, was the one who took her into the bedroom and raped her at gunpoint. When asked how she knew it was Defendant, and not someone else, she stated she saw his upper face and heard him talking, when she looked behind her as he held the gun to her back and forced her into the room. She said he told her he was going to blow her brains out and she pleaded with him to stop because she was pregnant. T.A. identified Defendant and Borders from photo lineups, and also identified Defendant in a live lineup as the person who raped her.

The evidence shows T.A. had the opportunity to observe and was able to distinguish the two defendants from each other. At no point during her testimony and identification of the defendants did she seem confused about who they were or what they had each done in the

10

apartment. A reasonable trier of fact could find, based on all the evidence, T.A. identified the man who raped her as Defendant and not Borders, beyond a reasonable doubt.

From this evidence and the reasonable inferences therefrom, a reasonable fact-finder could have found Defendant forcibly raped T.A. at gunpoint. Therefore, there was sufficient evidence to support his conviction for forcible rape under Count XIX and the accompanying armed criminal action under Count XX. Accordingly, the trial court did not err in denying Defendant's motions for judgment of acquittal. Point denied.

## V. Conclusion

For the foregoing reasons we affirm the trial court's decision.

_____
Colleen Dolan, Judge

Sherri B. Sullivan, P.J., concurs.
Roy L. Richter, J., concurs.

11