Introduction
Gary M. Gaertner, Jr., Judge
Ronald Washington, Jr. (Washington) appeals from the trial court’s judgment and sentence following his conviction for one count of assault in the first degree after a bench trial. He asserts the trial court erred in admitting certain evidence. We affirm.
*121 Background and Procedure
The State charged Washington with one count of assault in the first degree stemming from an incident in which he caused serious physical injury to Florence Washington (Victim), his mother, by beating her with his fists and kicking her. Prior to trial, Washington moved, as relevant to the issues on appeal, to exclude Victim’s hospital records following the alleged attack as testimonial in nature. The trial court denied the motion after a hearing.
At a bench trial, the following evidence was adduced. Patricia Williams (Williams) testified that she had lived three houses down from Victim for ten years and that they were close friends. Washington moved in with Victim sometime in 2014. On July 8, 2014, Williams was on her front porch when she witnessed Washington throw Victim out her front door and onto the ground, and punch, stomp, and kick her. Williams described that Washington held Victim’s head up by her hair so he could punch her in the face. Williams approached Washington and Victim, and Washington ran away. Williams testified that when Victim returned home from the hospital, her arm was in a cast, her face was very swollen, and she had trouble eating. Victim did not testify at trial, because she was deceased. Williams testified that she had not met Washington but she knew who he was, and that she had once yelled at him to get off her property when he was drunk and flirting with her fourteen-year-old daughter.
Beverly Hills, Missouri Police Chief Andrew Henley (Chief Henley)[1] testified that he responded to the scene. After the police apprehended Washington, Chief Henley read Washington his Miranda[2] rights and took him into custody. At the police station, after Chief Henley again advised Washington of his rights, Washington refused to sign the form but verbally stated he knew what his rights were. Chief Henley did not ask Washington any questions, but Washington spontaneously stated during the booking process that Victim had nagged him and he snapped. Washington asked Chief Henley to tell Victim he was sorry.
Trisha Rogers (Rogers), a system support analyst from the St. Louis County Department' of Justice Sendees, testified that she was the custodian of inmate phone records. When inmates make a telephone call, they must first enter their inmate number plus the last four digits of their social security number. The system has voice-recognition software to indicate if more than one inmate is talking on the phone call, as that is a common occurrence. Rogers did not testify that the voice-recognition software was able to identify the specific inmate speaking. All inmate phone calls are recorded and saved on a server. Rogers testified that in response to a request from law enforcement, she had provided recordings of all of Washington’s inmate phone calls. Washington objected to the admission of the recordings as without foundation both as to the recording process and because the State had failed to establish that Washington’s voice was the one recorded. The trial court overruled the objections, noting that the voice-recognition issue went to the weight of the recordings, rather than their admissibility.
The court then listened to the recordings, which revealed the following. During a conversation on August 17, 2014, be *122 tween an inmate identified as Washington and an unidentified female, the inmate referred to himself as Ronald Washington Junior with inmate number 197502 and referred to the unidentified female as “ma” and “mom.” During that conversation, Washington stated: “I just wanted to call you. I just wanted to apologize for getting mad and hitting you.” During the same telephone conversation, a third person named Lucretia Williams was linked in and Washington stated to her: “I got real mad at my mom’s house, you know, and I hit her a couple times and police locked me up and brought me to jail.”
Last, the State moved to admit Victim’s medical records from July 8, 2014, as a business record under Section 490.692, RSMo. (2000). Washington objected to the extent the State would use the medical records to establish the identity of Victim’s assailant, noting the medical records included non-medical statements that Victim was a victim of violence and that she had identified Washington as her attacker. Washington also objected to the State using medical records rather than live testimony to establish serious injury, arguing the medical records were hearsay. The trial court overruled Washington’s objections and admitted the medical records on the grounds that the Business Records Act overcame the hearsay objection, and as such the medical records alone were proper evidence of injuries. To the extent the medical records identified Washington as the assailant, the trial court agreed that this was not proper evidence but nevertheless admitted the records in their entirety. The medical records showed that Victim suffered a fractured left wrist and a fractured right cheekbone. The medical records also in several places stated that Victim had identified her son, Washington, as her assailant.
Following the bench trial, the trial court found Washington guilty of first-degree assault and sentenced him to twenty years’ imprisonment in the Missouri Department of Corrections. This appeal follows.
Discussion
Point I
In his first point on appeal, Washington argues the trial court abused its discretion in overruling his objection to the admission of Victim’s medical records in their entirety, because the medical records contained hearsay statements identifying Washington as Victim’s assailant. We disagree.
We review a trial court’s decision to admit or exclude hearsay evidence for an abuse of discretion. State v. Justus, 205 S.W.3d 872, 878 (Mo. banc 2006). An abuse of discretion occurs when the trial court’s ruling is clearly against the logic of the circumstances or is so arbitrary and unreasonable as to shock the sense of justice and suggest a lack of careful consideration. State v. Hughes, 497 S.W.3d 400, 403 (Mo. App. E.D. 2016). We will only reverse a conviction if the error was so prejudicial that it deprived the defendant of a fair trial. Id.
Hearsay is any out-of-court statement that is used to prove the truth of the matter asserted. State v. Tisius, 362 S.W.3d 398, 405 (Mo. banc 2012). Hearsay statements are inadmissible unless they fall into a recognized exception. Id at 406. However, “[i]n a judge-tried case, we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment, unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence.” State v. Dixon, 495 S.W.3d 812, 820 (Mo. App. S.D. 2016).
*123 It is not clear from the record here the trial court considered or relied on the hearsay evidence contained in the medical records. Rather, the trial court specifically acknowledged that any evidence in the medical records identifying Washington as Victim’s attacker was not admissible as proof that Washington in fact committed the crime. We must presume, therefore, that any hearsay evidence regarding the identity of Victim’s attacker did not influence the trial court. See id. We also presume that the trial court knows and follows the law. See State v. Fuelling, 145 S.W.3d 464, 469 (Mo. App. W.D. 2004). Without proof that the trial court considered inadmissible evidence in reaching its decision, no error occurred that was so prejudicial it deprived Washington of a fair trial. See Hughes, 497 S.W.3d at 403. Moreover, despite Washington’s arguments to the contrary, there was sufficient other evidence in the record from which the trial court could have found that Washington assaulted Victim: an eyp-witness to the attack testified that she witnessed Washington assaulting Victim, Washington admitted to the police that he “snapped” after Victim nagged him, and in a recorded conversation at the St. Louis Justice Center Washington stated that he had hit Victim. The trial court did not abuse its discretion in admitting Victim’s medical records in their entirety.
Point denied.
Point II
In his second point on appeal, Washington argues the trial court plainly erred in admitting the recorded telephone calls from the St. Louis Justice Center, because the State failed to lay an adequate foundation to admit the recordings in that the State failed to identify the speakers on the recordings, to demonstrate the authenticity and correctness of the recordings, and to show no alterations to the recordings. We disagree.
There are seven elements the State must establish in order to lay a proper foundation to admit a sound recording into evidence: (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement. State v. Simmons, 861 S.W.2d 128, 133 (Mo. App. E.D. 1993) (citing State v. Wahby, 775 S.W.2d 147, 153 (Mo. banc 1989)).
At trial, the State sought to admit several recordings of phone calls Washington made as an inmate at the St. Louis Justice Center. Washington objected to their admission for lack of proper foundation, arguing specifically that the records custodian did not have a personal connection to the recording in that she did not identify the specific conversation recorded at a particular time and place, she herself did not make the recording, she did not testify the equipment was in working order, and she did not testify to using the proper procedure to make the recording. Read generously, we understand this objection to cover the elements of: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, and (3) establishment of the authenticity and correctness of the recording. In addition, Washington objected that the State had failed to identify him as the voice on the recording, which is the sixth element regarding identification of the speakers.
*124 On appeal, Washington now asserts foundational error as to the third, fourth, and sixth elements: (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; and (6) identification of the parties.
Washington’s challenges to the identification issue and to the authenticity and correctness issue are preserved for our review. The trial court has broad discretion in determining the admissibility of evidence, and we will not disturb the court’s decision absent an abuse of discretion. Wahby, 775 S.W.2d at 153. Moreover, we review for prejudice, not mere error, and we will only reverse where an error occurred that was so prejudicial it deprived the defendant of a fair trial. State v. Churchill, 98 S.W.3d 536, 538 (Mo. banc 2003).
To the extent Washington challenges for the first time on appeal that the State failed to show the recording had not been altered after it was made, this argument was not preserved for appeal and we will review it only for plain error. State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009); see also State v. Johnson, 207 S.W.3d 24, 43 (Mo. banc 2006) (error claimed on appeal must be based on same theory as one presented at trial and may not be broadened). “Plain error is found when the alleged error ‘facially establish[ed] substantial grounds for believing a manifest injustice or miscarriage of justice occurred.’ ” Tisius, 362 S.W.3d at 405.
As to Washington’s argument that the recordings were inadmissible because the State failed to prove he was the inmate speaking on the recordings, this argument fails. The State produced evidence that to make a telephone call from jail, all inmates must first enter their inmate number plus the last four digits of their social security number. The telephone calls are recorded and saved under this identifying information. The St. Louis Justice Center employs a voice-recognition system to detect telephone calls where more than one inmate is speaking. This identification system is sufficient to establish the speaker-identity element for creating a proper foundation to admit a recorded conversation. Evidence of fraud within the system, such as inmates making telephone calls using other inmates’ numbers, is relevant to the eviden-tiary weight of the recorded conversations, not their admissibility. We decline to require trial courts to assume that the inmate speaking on the recorded conversation is different than the inmate whose identifying information was used. Here, the St. Louis Justice Center recording system identified Washington by his inmate and social security numbers as the inmate who made the proffered recorded telephone conversation, and this was sufficient to identity him as the speaker. Moreover, we note Washington was not prejudiced by the trial court’s admission of the recordings, in that during the course of the recorded conversations Washington further identified himself by name and inmate number while giving instructions on how to send him letters.
Next, Washington asserts the State failed to establish the authenticity and correctness of the recordings. We disagree. At trial, the custodian of inmate phone records testified to the process for creating and storing the recordings, that she personally created the copies of Washington’s inmate telephone-call recordings in response to a request from law enforcement, and that she had listened to recordings and could identify them as the calls recorded by the St. Louis Justice Center system. This testimony addresses the authenticity of the recordings and was sufficient to establish that the recordings ad *125 mitted at trial were what they purported to be: recordings of telephone calls made by inmate Washington at the St. Louis Justice Center.
Last, Washington argues the State failed to prove the recordings were not altered after they were made. This argument fails. Because Washington did not object on this ground at trial, there is very little for this Court to review. Regardless, even if the trial court erred in admitting the recordings on this ground, their admission did not result in manifest injustice or a miscarriage of justice. See Tisius, 362 S.W.3d at 405. In light of the substantial evidence of Washington’s guilt, there is no reasonable probability that without the recorded conversations the verdict would have been different. See State v. Durham, 371 S.W.3d 30, 37 (Mo. App. E.D. 2012) (we will only reverse conviction under plain-error review if there was decisive effect on outcome of trial, meaning that there is reasonable probability that, absent evidence, verdict would have been different).
The trial court neither abused its discretion nor plainly erred in admitting the recorded conversations Washington made while incarcerated in the St. Louis Justice Center. See Wahby, 775 S.W.2d at 153; see also Tisius, 362 S.W.3d at 405. Point denied.
Conclusion
The judgment of the trial court is affirmed.
James M. Dowd, P.J., concurs.
Kurt S. Odenwald, J., concurs.

. At the time of the incident, Chief Henley was a sergeant with the Beverly Hills Police Department.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).