

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111688 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | Cause No. 19SL-CR00960-01 |
| | ) | |
| ROBERT BREFFORD, | ) | Honorable David L. Vincent III |
| | ) | |
| Appellant. | ) | FILED: November 26, 2024 |

Opinion

Robert Brefford (Defendant) appeals from the trial court's judgment following a jury trial convicting him on first-degree assault against Victim 1,[1] attempted first-degree assault against Victim 2, and two counts of armed criminal action. Defendant raises three points on appeal. Points One and Two challenge the self-defense instructions. Defendant first argues the instructions should not have stated that a person is not justified in using physical force during the commission of a burglary because the evidence did not support finding he was committing a burglary. Defendant next claims the instructions should have defined "entering unlawfully" and "remaining unlawfully" because the terms were not within a juror's ordinary understanding and were relevant to deciding whether Defendant entered or remained in Victim 1's home with permission. In his third point, Defendant asserts the trial court abused its discretion by not

---

[1] Names are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).

striking Victim 2's testimony when he refused to answer material questions. We find there was substantial evidence from which a juror could reasonably find that Defendant was committing a burglary when he pursued Victims into the home to keep shooting at them after they retreated from his gunfire and shut the door. Therefore, the trial court did not err in submitting the issue to the jury, and we deny Point One. Because instructing on the definitions of "entering unlawfully" and "remaining unlawfully" is permissible but not mandatory, and Defendant did not request them, the trial court did not err by not *sua sponte* instructing on them, and we deny Point Two. Lastly, the trial court did not abuse its discretion by declining to strike Victim 2's testimony because after admonishing and redirecting him to answer defense counsel's questions, Victim 2 did answer questions that were closely related to the commission of the offense. Point Three is denied. Accordingly, we affirm the trial court's judgment.

Background

*The Evidence at Trial*

The following evidence was adduced at trial: Victim 1 and his girlfriend, Defendant's Sister, lived together at his home. Sister, Victim 1, and his brother (Victim 2) got into an argument. Sister became drunk and violent. Victim 1 called the police, and Sister called Defendant on the phone to come help her, telling Defendant that they were "jumping on [her]." Sister had previously told Defendant that Victim 1 was abusive to her. Defendant drove to the home and found Sister, Victim 1, and Victim 2 standing outside on the front porch. At that point, Sister had calmed down and was planning to leave, and no one was being physically violent. Defendant exited the car and demanded to know whether Victims were "jumping [his] sister." Defendant "immediately" started shooting at Victims from the street, firing multiple times as he came towards them. Victims, both unarmed, retreated into the home and closed the door. Defendant pursued them into the home. He "burst into the front door" and chased them

2

while firing at them. He shot Victim 1 and attempted to shoot Victim 2. Victim 1 one was shot from behind in his arm and lower back, resulting in temporary paralysis that confined him to a wheelchair for over a year.

***Defendant's Motion to Strike Victim 2's Testimony***

The trial included testimony from Defendant, Sister, and Victims, among other witnesses. On cross-examination, Victim 2 demonstrated reluctance to answer questions and also asked questions of defense counsel. The details of this exchange will be set forth in the discussion section. The trial court warned Victim 2 that it would strike his testimony if he did not answer defense counsel's questions. The Defendant moved to strike the entirety of Victim 2's testimony, and the trial court denied Defendant's motion.

***Jury Instructions***

The trial court instructed the jury on self-defense as well as defense of another. Over Defendant's objection, the self-defense instructions noted that "[a] person is not justified in using physical force to defend himself if he was committing a burglary." The instructions defined burglary as "when the person knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing assault."

The jury convicted Defendant as charged. The trial court sentenced Defendant to twenty years in prison for first-degree assault, fifteen years for attempted first-degree assault, and three years for each count of armed criminal action, to be served concurrently. Defendant moved for a new trial, which was denied. This appeal follows.

<u>Discussion</u>

**I.     Points One and Two—Self-Defense Instructions**

<u>*Standard of Review*</u>

3

"This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction." *State v. Bruner*, 541 S.W.3d 529, 534 (Mo. banc 2018) (quoting *State v. Jackson*, 433 S.W.3d 390, 395 (Mo. banc 2014)). "A jury instruction must be supported by substantial evidence and the reasonable inferences to be drawn therefrom*." State v. Burnett*, 481 S.W.3d 91, 95 (Mo. App. E.D. 2016) (quoting *State v. Avery,* 275 S.W.3d 231, 233 (Mo. banc 2009)). "An appellate court will only reverse a case based on instructional error when an error occurs and the error misleads the jury to the prejudice of the defendant." *Id.* (citing *Avery,* 275 S.W.3d at 233). "However, if an instruction contains an accurate statement of law and is supported by the evidence, there is no prejudice." *Id.* (citing *Avery,* 275 S.W.3d at 233).

We view the evidence in the light most favorable to giving the instruction. *State v. Whitaker*, 636 S.W.3d 569, 574 (Mo. banc 2022) (quoting *Bruner*, 541 S.W.3d at 534); *Burnett*, 481 S.W.3d at 95 (internal citation omitted). "Review is conducted in the light most favorable to the record, and, if the instruction is supported by any theory, its submission is proper." *State v. Welch*, 600 S.W.3d 796, 809 (Mo. App. E.D. 2020) (citing *Hervey v. Missouri Dept. of Corrs.*, 379 S.W.3d 156, 159 (Mo. banc 2012)). "Part of viewing the evidence in the light most favorable to the requested instruction means the circuit court must indulge all reasonable inferences drawn from that evidence that support the giving of the instruction." *Whitaker*, 636 S.W.3d at 575 (internal citation omitted).

Defendant erroneously suggests this Court should view the burglary evidence in the light most favorable to him. It is true that when the question is whether to give a self-defense instruction, viewing the evidence "in the light most favorable to giving the instruction" amounts to viewing the evidence in the light most favorable to the defendant who proffered it. *State v. Sinks*, 652 S.W.3d 322, 336 (Mo. App. E.D. 2022) (citing *Whitaker*, 636 S.W.3d at 574 (citing

4

*Bruner*, 541 S.W.3d at 534)).  Here, the trial court found Defendant was entitled to self-defense instructions.  The question is whether the trial court's inclusion of burglary within the self-defense instructions was supported by the evidence.  The State sought to include burglary, and Defendant sought to exclude it through objection but did not proffer his own version.[2]  Viewing the evidence favorably to the instructions here means favorably to including burglary as proffered by the State.  *See Burnett*, 481 S.W.3d at 95 (internal quotation omitted) ("view[ing] the evidence and inferences in the light most favorable to the State, which was the party tendering the instruction"); *see also Whitaker*, 636 S.W.3d at 575 (internal citation omitted); *Welch*, 600 S.W.3d at 809.

<u>*Point One—No Error in Instructing on Burglary in Self-Defense Instructions*</u>

Defendant asserts the trial court erred by instructing the jury that he was not entitled to use self-defense if he was committing a burglary.  Defendant claims no evidence corroborated finding he entered or remained unlawfully in Victim 1's home so as to support the inclusion of burglary in the self-defense instructions.  We disagree.

A defendant is not entitled to the justification of self-defense if he or she was "attempting to commit, committing, or escaping after the commission of a forcible felony."  § 563.031.1(3);[3] *State v. Gates*, 635 S.W.3d 854, 861 n.5 (Mo. banc 2021).  Burglary is a forcible felony.  § 563.011(4), RSMo (Cum. Supp. 2018) (defining forcible felony as "any felony involving the use or threat of physical force or violence against any individual, including but not limited to murder, robbery, burglary, arson, kidnapping, assault, and any forcible sexual offense").  As will be

---

[2] Defendant states the trial court created its own instructions.  We caution this does not relieve a party from the burden to submit written instructions, particularly to preserve them for appellate review.  *See State v. O'Keefe*, 681 S.W.3d 615, 626 (Mo. App. E.D. 2023) (noting Mo. R. Crim. P. Rule 28.02(b) requires a defendant to submit all proposed instructions in writing).  The State's proffered instructions are in the record on appeal.
[3] All statutory references are to RSMo (2016), unless otherwise indicated.

shown below, the trial court's inclusion of the forcible felony language was supported by substantial evidence adduced at trial that Defendant was committing a burglary when he used force against Victims by pursuing them into the home and shooting at them. *See Whitaker*, 636 S.W.3d at 575 (internal citation omitted) (applying "the general rule . . . that an instruction must be based upon substantial evidence and the reasonable inferences therefrom").

A person commits the offense of burglary "if he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing an offense therein[.]" §§ 569.160, .170. "[A] person enters or remains in or upon premises [unlawfully] when he or she is not licensed or privileged to do so." § 569.010 (Cum. Supp. 2018); *State v. Whitley*, 408 S.W.3d 305, 309 (Mo. App. E.D. 2013) (internal quotation omitted); *see also* § 563.011(8), (11) (similarly defining unlawfully entering and remaining after unlawfully entering for purposes of a defense of justification). Missouri Approved Instructions–Criminal (MAI-CR) 4th 406.06 directs a trial court to include language that a defendant is not justified in using physical force to defend himself if he was committing a forcibly felony "only if there is evidence that defendant's use of physical force was in connection with the commission of . . . a forcible felony."

Here, the trial court instructed the jury on self-defense for the two assault counts. The self-defense instructions included the language patterned from MAI-CR 4th 406.06 that "a person is not justified in using physical force to defend himself if he was committing a burglary" and defined burglary as "when the person knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing assault."

Defendant contends there was evidence he was on the premises because Sister telephoned him to come. Defendant suggests he was an invitee of Sister, who testified she lived at the home

6

with Victim 1. Defendant correctly states that "[i]f the defendant had 'the consent of a resident to enter the home, he is not guilty of burglary, regardless of what other crimes he may have committed therein.'" *State v. McGinnis*, 317 S.W.3d 685, 687 (Mo. App. W.D. 2010) (quoting *State v. Cooper,* 215 S.W.3d 123, 126 (Mo. banc 2007)). However, when determining whether substantial evidence supported an instruction, we view the record favorably to giving the instruction, and the trial court did not err in respecting the province of the jury to decide whether it believed or disbelieved that Sister gave Defendant permission to enter the residence to shoot Victims. *See Whitaker*, 636 S.W.3d at 575 (internal citation omitted). The record showed Sister and Victims were outside the home when Defendant began shooting at Victims. Victims retreated into the home, which Victim 1 owned, and closed the door behind them. Defendant pursued them, "burst[ing] into the front door" and continuing to fire at them, ultimately shooting Victim 1. Even if there was some evidence from which the jury could find Defendant initially had permission from a resident to enter the home, any such permission could reasonably be found to have been extinguished by Defendant's actions when he shot at Victims, pursued them into the home by opening the door that Victims had closed, and continued to fire at them. *See Whitley*, 408 S.W.3d at 309 (finding a burglary defendant kicking open a door while firing shots at someone who had retreated inside a home revoked any permission the defendant might have had to be there); s*ee also State v. Hovis*, 684 S.W.3d 748, 751 (Mo. App. S.D. 2024) (noting Missouri law does not require the State prove all residents denied a defendant permission to enter); *State v. Rhodes*, 408 S.W.2d 68, 70 (Mo. 1966) (internal citations omitted) (noting that opening a closed door is sufficient to prove forcible entry for burglary).

Therefore, there was substantial evidence to submit to the jury the issue of whether Defendant lacked permission to enter the home when he did, and the trial court did not err by

including burglary in the self-defense instructions. *See Whitaker*, 636 S.W.3d at 575 (internal citation omitted); *Welch*, 600 S.W.3d at 809 (citing *Hervey*, 379 S.W.3d at 159). Point One is denied.

### Point Two—No Error in Omitting Optional Definitions

Defendant next claims the trial court plainly erred by not *sua sponte* instructing the jury on the definition of two phrases in the definition of burglary—"entering unlawfully" and "remaining unlawfully"—because the terms were not within a juror's ordinary understanding and bore on whether Defendant was an invitee. We find no merit to Defendant's argument.

The MAI does not mandate instructing the jury on the definitions of "enter unlawfully" or "remain unlawfully" for burglary. *See* MAI-CR 4th 423.54 Notes on Use 2(b). Rather, if the terms are used, they **may** be defined by the Court on its own motion and, alternatively, **must** be defined upon written request in proper form by the State or by the defendant. *Id.* (citing MAI-CR 4th 433.00). The MAI distinguishes between mandatory and permissible definitions. The MAI specifically highlights the exact language found in MAI-CR 4th 423.54 Notes on Use 2(b) as "[t]ypical language that authorizes, but does not require" a definitional instruction. MAI-CR 4th 433.00 Notes on Use 2(b).

Inasmuch as Defendant failed to request, orally or written, that the jury be instructed on the definitions, the trial court had discretion whether to do so *sua sponte* and committed no error by not doing in this case. *See* MAI-CR 4th 423.54 Notes on Use 2(b) (citing MAI-CR 4th 433.00).

We also note that we find Defendant's reliance on *State v. Hunt*, 451 S.W.3d 251 (Mo. banc 2014) (per curiam) to be misplaced. Defendant argues *Hunt* stands for the proposition that a trial court plainly errs by failing to instruct a jury *sua sponte* on non-mandatory definitions. We disagree. The defendant in *Hunt* was a law enforcement officer who was charged with

8

assault, burglary, and property damage in the course of arresting a suspect wanted for drug manufacturing and child endangerment. *Hunt* reversed all of the deputy's convictions on various grounds, including reversing his assault conviction for plainly-erroneous ***non-MAI*** patterned instructions. *Id.* at 260–61. *Hunt* found numerous problems with the non-MAI instructions on assault and the deputy's use of reasonable force, including: erroneously inviting the jury to decide the legal issue of whether the defendant was a law enforcement officer; failing to inform the jury that a law enforcement officer is justified in using such physical force as the officer reasonably believes is immediately necessary to effect the arrest; and failing to instruct the jury that it could convict the deputy only if he exceeded that force permitted by law—an essential element when a police officer is charged with assault in the line of duty. *Id.* at 261–63. Defendant cherry-picks an observation from *Hunt* that "the State has admitted that the burglary instructions were erroneous precisely because Instruction 5 did not define 'enter unlawfully,' a legal term on which the jury needed guidance." *Id.* at 262. Critically, however, Defendant ignores the context of this observation, which was that the jury needed guidance "as to what specific conduct of [the deputy] would make the entry or arrest lawful or unlawful" given that the defendant, a law enforcement officer, professed to be carrying out an arrest under color of law. *Id.* Indeed, *Hunt* was concerned with a "catch-22" in that the State could not prove both a knowingly unlawful entry ***and*** an intent to commit assault, because if the deputy had a reasonable belief that the suspect was there, then his entry was not knowingly unlawful. *Id*. at 258. Contrastingly, no such complication exists in the case before us. *See id.* Defendant, although perhaps burdened with good intentions to protect Sister, was not a law enforcement officer for whom the jury needed to be instructed on entering without permission from the resident for purposes of making a lawful arrest. *See id.* Defendant was shooting at Victims

9

before, during, and after he entered the home. The trial court issued jury instructions properly patterned after the MAI that did not fail to provide any mandatory definitions requested by the Defendant. Finding no error, we deny Point Two.

## II. Point Three—Victim 2's Testimony

*Standard of Review*

Trial courts have broad discretion over the admission or exclusion of evidence, including handling witness testimony. *State v. Hughes*, 497 S.W.3d 400, 403 (Mo. App. E.D. 2016) (internal citation omitted). Therefore, we review a trial court's decision whether to strike witness testimony for an abuse of discretion. *See id.* (internal citation omitted). "An abuse of discretion exists when the trial court ruling 'clearly offends the logic of the circumstance or appears arbitrary and unreasonable.'" *Id.* (internal quotation omitted). We will only reverse for outcome-determinative prejudicial error that "deprive[s] the defendant of a fair trial." *Id.* (internal quotation omitted). "While the admissibility of evidence is reversed only when a court finds a clear abuse of discretion, 'whether a defendant's rights were violated is a question of law reviewed de novo.'" *Id.* (internal quotation omitted).

*No Error in Denying Defendant's Motion to Strike Victim's 2 Testimony*

In Point Three, Defendant argues the trial court abused its discretion by failing to grant his request to strike the entirety of Victim 2's testimony. Defendant alleges that during defense counsel's cross-examination, Victim 2 refused to answer questions that were closely related to the commission of the offense. We disagree.

Cross-examination is required for the proper administration of justice as protected by the Sixth Amendment right to confrontation. *State v. Schnelle*, 7 S.W.3d 447, 452 (Mo. App. W.D. 1999) (citing *State v. Brown*, 549 S.W.2d 336, 341–42 (Mo. banc 1977)); *see Hughes*, 497 S.W.3d at 403 (quoting U.S. CONST. AMEND. VI ("In all criminal prosecutions the accused shall

10

enjoy the right . . . to be confronted with the witnesses against him.")). "It is unfair for government witnesses to freely answer questions on direct then refuse to answer questions about the same subject matter on cross-examination because this leads to the substantial risk of prejudice to the defendant." *Hughes*, 497 S.W.3d at 405 (internal citation omitted); *see also Brown*, 549 S.W.2d at 343 (internal citation omitted).

If a witness ultimately refuses to answer a question on cross-examination, the appropriate remedy depends on how closely connected the answer would be to the case. *Schnelle*, 7 S.W.3d at 453 (citing *State v. Blair*, 638 S.W.2d 739, 754 (Mo. banc 1982)). If the answer would be merely collateral or cumulative, striking may not be necessary; if the answer would be "connected solely with one phase of the case," a partial strike may be adequate; and some answers would be "so closely related to the commission of the crime that the entire testimony of the witness should be stricken." *Id.* (quoting *Blair*, 638 S.W.2d at 754). Generally, we defer to a trial court's superior ability to manage its courtroom and facilitate a fair trial, including handling difficult witnesses. *See Brown*, 549 S.W.2d at 343. A trial court has less drastic means of relief than striking a witness's entire testimony when the question he is refusing to answer is of a collateral nature. *Schnelle v. State*, 103 S.W.3d 165, 175 (Mo. App. W.D. 2003).

Here, at the beginning of Victim 2's cross-examination, defense counsel asked Victim 2 about his prior criminal history, and Victim 2 denied having a prior conviction. The focus of this appeal is Defendant's claim that, as cross-examination proceeded, Victim 2 refused to answer questions regarding the events leading up to Sister calling Defendant and what she told him, which Defendant maintains were closely related to the offense. We consider the following exchange:

11

Q: Okay. So where were you? Approximately how far away from the house were you when you saw [Sister] run off the front porch and get into her Mercedes?

A: We was still in the car. We was coming up the street. So how far would that be?

Q: That's what I am asking.

A: I mean, how far do you think that would be?

Q: I'm asking you. I wasn't there.

A: I'm asking you a question now. How far do you think that would be for her to run and get in her car, crank it up, and come down the street towards us?

Q: I'm asking–

A: How much time do you think it would take for her to come and do that?

Q: I don't think she did, but I'm asking you where you were.

A: I mean, you wouldn't think she did because you're the attorney, right? You're defending him, right?

Q: So do you know–

A: That's what I'm saying. You're defending him, right?

Q: Yes, my job is to defend [Defendant], yes. My question to you, though, sir–

A. Your question wouldn't even matter.

Q: My question doesn't matter?

A: No, it don't.

Q: Okay. Would you do the courtesy of just answering my question, then?

A: I just said I answer ain't answering it.

Q: You aren't going to answer it?

A: No.

Q: Are you refusing to answer any further questions, sir?

A: Yes.

Defendant moved to strike the entirety of Victim 2's testimony. The State explained Victim 2 was rattled by disturbances from family members in the courtroom, and the trial court advised the State to warn Victim 2 that it would strike his entire testimony if he refused to answer. When questioning resumed, Victim 2 said that he would answer.

Defense counsel then cross-examined Victim 2 about Sister's phone call to Defendant. Counsel confronted Victim 2 with his deposition testimony about exactly when Sister called Defendant. Defense counsel again asked if Victim 2 was refusing to answer his questions, which Victim 2 denied, explaining he already said Sister called Defendant when she went into the house. The trial court asked counsel to move on. As cross-examination continued, Defense

12

counsel kept impeaching Victim 2 with his deposition testimony, and Victim 2 interspersed his answers with questions to defense counsel. Victim 2 asked: "So what's the purpose of you keep on asking me different questions, if I'm telling you what happened? Like, I'm just--I just don't get it." When defense counsel asked Victim 2 if Sister told Defendant over the phone that Victims were jumping on her, Victim 2 responded by asking what the deposition said, to which defense counsel clarified that he was not asking what the deposition said. Victim 2 replied, "You had me to open it up, and now I'm going to read it."

At this point, the trial court intervened and spoke to Victim 2 outside the jury's hearing. The trial court urged Victim 2 to consider the importance of the case to himself and Victim 1 and warned Victim 2 to be more responsive to defense counsel's questions. Afterwards, defense counsel continued to cross-examine Victim 2 for a significant period without Victim 2 refusing to answer or questioning counsel. Later, during closing argument, defense counsel referred to Victim's 2 testimony as "a horrendous spectacle" and argued that Victim 2's inconsistencies with Victim 1's account established reasonable doubt.

We find no trial court error. Although Victim 2 was obstinate and inappropriately asked questions of defense counsel, his initial refusal to answer was cured by the trial court's actions so as to enable effective cross-examination. *See Hughes*, 497 S.W.3d at 405. This is not a case in which the State's witness invoked his Fifth Amendment right to be free from self-incrimination to prevent inquiry on cross-examination into the details of his direct testimony, such that cross-examination was unreasonably limited. *See id.* at 403 (internal citation omitted). We agree that Victim 2 never admitted his prior conviction for third-degree battery, but the parties later stipulated to that collateral fact for the jury. *See Schnelle*, 7 S.W.3d at 452, 455 (noting that striking the entirety of a witness's testimony for failure to respond to a single collateral question

is a drastic measure).  While Victim 2 initially refused to answer questions about the events leading up to the incident with Defendant, the focus of this appeal, the questions were eventually answered, even if not in the manner most desired by Defendant.  "The Confrontation Clause guarantees only the meaningful opportunity for effective cross-examination and not 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'"  *Hughes*, 497 S.W.3d at 405 (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988) (finding the trial court did not abuse its discretion by giving counsel every reasonable opportunity to elicit the truth from the State's witness and declining to strike the witness's testimony after defense counsel was able to effectively cross-examine him)).  Therefore, we reject Defendant's claim that Victim 2's testimony needed to be struck in its entirety for failing to provide answers to questions closely related to the offense.  *See Schnelle*, 7 S.W.3d at 453 (citing *Blair*, 638 S.W.2d at 754).

The record shows the trial court gave careful consideration to Defendant's request to strike Victim 2's testimony but was ultimately successful in redirecting Victim 2 to provide answers.  "[W]here [a witness] on cross-examination before a referee refuses to answer proper and pertinent questions, he should be compelled by the judge, on proper request, to make full and complete answer."  *Brown*, 549 S.W.2d at 341 (internal quotation omitted).  The trial court appropriately cautioned Victim 2 that it would strike his testimony if he did not answer defense counsel's questions.  Following the trial court's warning, Victim 2 answered defense counsel's questions, facilitating cross-examination that was later relied on by Defendant in closing argument.  *See id.*  Finding no abuse of the trial court's discretion, we deny Point Three.  *See Hughes*, 497 S.W.3d at 405 (internal citation omitted).

## Conclusion

The judgment of the trial court is affirmed.

_Rebeca Navarro-McKelvey_
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
James M. Dowd, .J., concur.